People v Coley (2025 NY Slip Op 01945)

People v Coley

2025 NY Slip Op 01945

Decided on April 2, 2025

Appellate Division, Second Department

Voutsinas, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 2, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
ROBERT J. MILLER
HELEN VOUTSINAS
LOURDES M. VENTURA, JJ.

2023-05142
 (Ind. No. 72033/22)

[*1]The People of the State of New York, appellant,
v
Derrick Coley, respondent.
The People, etc., appellant,
v Adrian Febus, respondent.
The People, etc., appellant,
v Dominique Pearsall, respondent.
The People, etc., appellant,
v Alexandra Rossy, respondent.

APPEAL by the People from an order of the Supreme Court (Frances Y. Wang, J.), dated May 3, 2023, and entered in Queens County, which granted the defendants' motions, inter alia, pursuant to CPL 30.30 to dismiss the indictment on the ground that they were deprived of their statutory right to a speedy trial.

Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Charles T. Pollak, and Corey Reisman of counsel), for appellant.
Randall D. Unger, Kew Gardens, NY, for respondent Derrick Coley; Ali Najmi, New York, NY, for respondent Adrian Febus; Susan Silverman, Bayside, NY, for respondent Dominique Pearsall; Vivian Cedeno, Bayside, NY, for respondent Alexandra Rossy (one brief filed).

VOUTSINAS, J.

OPINION & ORDER
This appeal concerns the new disclosure obligations in criminal cases, enacted by the New York State Legislature, effective January 1, 2020, as part of sweeping criminal justice reform legislation under the new CPL article 245 (see L 2019, ch 59, § 1, part LLL). The new legislation provides, inter alia, for "[a]utomatic" disclosure by the People to the defendant of "all items and information that relate to the subject matter of the case" that are in the People's possession or control (CPL 245.20[1]). Specifically, this appeal concerns CPL 245.20(1)(k)(iv), which requires that the People disclose "[a]ll evidence and information" that "tends to . . . impeach the credibility of a testifying prosecution witness." We hold that, under the circumstances of this case, the People were required to disclose, pursuant to CPL 245.20(1)(k)(iv), underlying records from a prior case where one of the prosecution witnesses was found to be incredible, and that the Supreme Court properly determined, based upon the record before it, that the People's certificates of compliance were improper, properly struck a statement of readiness as illusory, and properly granted the defendants' motions, inter alia, pursuant to CPL 30.30 to dismiss the indictment on the ground that they were [*2]deprived of their statutory right to a speedy trial.
I. Factual and Procedural Background
On April 1, 2022, at approximately 12:45 a.m., Lt. Ramiro Ruiz and Police Officer Miguel Vanbrakle responded to a radio call of "men fighting" in Queens, and, upon arrival, they allegedly saw the defendants, Adrian Febus, Alexandra Rossy, Dominique Pearsall, and Derrick Coley, inside a 2012 black Infiniti car. "All parties" appeared to Officer Vanbrakle to be engaged in "verbal disputes." When one of the defendants got out of the car, Lt. Ruiz allegedly saw a loaded .380 caliber pistol "on the floor directly below the driver seat" of the car. The People filed a felony complaint against the defendants, charging various weapon-related offenses. On April 2, 2022, the defendants were arraigned on the felony complaint. On July 25, 2022, the defendants were charged under Indictment No. 72033/22 with criminal possession of a weapon in the second degree under an acting-in-concert theory. Coley and Febus were also charged with criminal possession of a weapon in the third degree.
On August 17, 2022, the People filed a certificate of compliance (hereinafter COC) and a statement of trial readiness pursuant to CPL 30.30, after furnishing the defendants with various items of discovery. In the COC, the People certified that all existing and known material and information subject to disclosure had been turned over to the defendants. The materials provided by the People included various "Law Enforcement Officer Witness" (hereinafter LEOW) letters for, among others, Lt. Ruiz and Officer Vanbrakle. The People did not provide LEOW letters for Police Officer Ralph Remy or Detective John Hart, who were listed as potential police officer witnesses. The LEOW letter for Lt. Ruiz (hereinafter the first Ruiz letter) indicated that there were three civil lawsuits in which he was named as a defendant, three substantiated Civilian Complaint Review Board (hereinafter CCRB) allegations, eight open CCRB allegations, six guilty pleas to New York City Police Department Internal Affairs Bureau (hereinafter IAB) charges, and another substantiated IAB charge. The first Ruiz letter also included a disclosure that Lt. Ruiz had testified at a suppression hearing (in an unrelated matter) conducted by Justice Ronald D. Hollie, and that, in a written decision dated December 30, 2020, the hearing court had found Lt. Ruiz's testimony "not credible in establishing probable cause for the stop of the defendant's vehicle and subsequent search." The first Ruiz letter did not provide the name or docket number of the case, nor the date of the testimony, and the People did not separately provide a copy of the written decision, a transcript of Lt. Ruiz's testimony at the suppression hearing, or any other underlying documents pertaining to that case. The LEOW letter for Officer Vanbrakle indicated that there were four civil lawsuits in which he was named as a defendant and seven substantiated IAB allegations against him. The People did not provide the underlying records regarding any of the civil complaints, IAB matters, or CCRB matters referred to in any of the LEOW letters.
On September 10, 2022, an attorney for one of the defendants sent an email to the People requesting LEOW letters for Officer Remy and Detective Hart, "as well as underlying documents paperwork for disciplinary history of these two officers." The email also stated that, while LEOW letters had been provided for the other police officer witnesses, none of "underlying documents for IAB or CCRB substantiated cases" had been provided. The email also specifically requested the "[c]ourt minutes for the suppression hearing where Lt. Ruiz'[s] testimony was found to be incredible by Judge Hollie on December 30, 2020."
On September 19, 2022, an assistant district attorney responded by email that he had "just turned over a litany of new LEOW documents with a supplemental COC" and that counsel should "reach out" should she have "any more concerns." On that same day, the People filed a supplemental COC, which again included a certification that the People had disclosed all existing and known material and information subject to discovery. The supplemental COC indicated that the People had provided, inter alia, LEOW letters for Officer Remy and Detective Hart, and updated LEOW letters for Lt. Ruiz and Officer Vanbrakle. The updated LEOW letter for Lt. Ruiz (hereinafter the second Ruiz letter) elaborated on the first Ruiz letter by indicating, among other things, that there were additional allegations against Lt. Ruiz. In addition, the second Ruiz letter corrected certain inaccurate information contained in the first Ruiz letter regarding the matter in which Lt. Ruiz's testimony was found to be incredible. Specifically, the second Ruiz letter stated that in "October 2016" Lt. Ruiz had testified in a pretrial suppression hearing before Justice Ronald D. Hollie, that Justice Hollie had "denied suppression of the evidence," but that "on review, in a written decision dated December 30, 2020, the Appellate Division, Second Department reversed J. Hollie's decision" and "found that 'none of the testimony of [[Lt.] Ruiz [or] the other officer [*3]witness] should be credited, such that the People failed to prove the legality of the vehicle stop and the admissibility of the evidence obtained as a result.'" The second Ruiz letter, like the first Ruiz letter, did not provide the name or docket number of the case or the date of the hearing, other than the reference to "October 2016." Although the People provided some underlying CCRB records for Lt. Ruiz, and some underlying IAB records for Officer Vanbrakle, they did not provide the transcript of Lt. Ruiz's testimony at the suppression hearing in the case in which he was found to be incredible, this Court's written decision finding his testimony to be incredible, or any other underlying records pertaining to that case.
On or about September 22, 2022, the defendants filed omnibus motions. In her motion, Rossy sought, inter alia, a determination that the People's COC and supplemental COC were invalid and to direct disclosure of certain discovery materials. Rossy argued that she had not received underlying paperwork related to Lt. Ruiz, that the supplemental COC did not include all underlying records, and that no underlying records regarding the case in which Lt. Ruiz's testimony was found to be incredible had been provided. In response, the People argued that CPL 245.20(1)(k) does not require the production of underlying documents related to police misconduct, and that the LEOW letters were sufficient to satisfy the statute. In an order dated November 17, 2022, the Supreme Court, among other things, determined that the People had failed to establish that they had exercised good faith and due diligence in turning over all known discovery prior to filing their COCs and therefore, the COCs were invalid. The court directed the People to provide all underlying records pertaining to substantiated and unsubstantiated IAB and CCRB records related to the police officers listed as potential witnesses, and to provide the underlying records related to the case in which Lt. Ruiz's testimony was found to be incredible. The court stated that "CPL § 245.20(1)(k) significantly expanded the People's obligation to provide impeachment evidence, going beyond what is required by Brady v Maryland, 373 U.S. 83," noting that "[CPL 245.20(1)(k)] did not include the 'materiality' requirement of Brady, by stating 'all evidence and information' which 'tends to impeach the credibility of a testifying prosecution witness . . . irrespective of whether the prosecutor credits the information.'" The court further held that the LEOW letters were not sufficient to satisfy CPL 245.20(1)(k).
On December 6, 2022, the People filed a second supplemental COC, but did not turn over all of the documents that the defendants had requested, and that the Supreme Court had directed the People to produce, particularly the underlying records related to the case in which Lt. Ruiz was found to have given incredible testimony, or the minutes of the hearing. The second supplemental COC indicated that the People had provided, among other things, a further updated LEOW letter for Lt. Ruiz (hereinafter the third Ruiz letter) and a copy of this Court's opinion and order which had found Lt. Ruiz's testimony incredible (see People v Harris, 192 AD3d 151). On December 14, 2022, one week after the second supplemental COC was filed, the People disclosed additional documents. On appeal, the People represent, and the defendants do not dispute, that this additional disclosure consisted of 136 pages of additional underlying IAB and CCRB documents related to Lt. Ruiz's disciplinary history, and 45 pages of additional underlying IAB documents relating to Officers Martinez and Remy and Detectives Christiano and Hart. The People did not file a supplemental COC after providing these additional materials.
On January 5, 2023, the parties appeared for a suppression hearing. However, since the People still had not provided the minutes for the hearing in which Lt. Ruiz's testimony was found to be incredible, the Supreme Court directed the People to turn over the minutes, and adjourned the hearing. The People provided those minutes on January 31, 2023. In February 2023, the People provided additional information regarding Officer Vanbrakle. The People did not file a supplemental COC after providing these additional materials.
On March 22, 2023, Rossy moved pursuant to CPL 30.30 to dismiss the indictment on the ground that the People had failed to be ready for trial for a period in excess of 180 days from the date of arraignment and to invalidate the People's second supplemental COC. Febus and Pearsall joined Rossy's motion. Coley separately moved for the same relief. The defendants argued that no valid COC had ever been filed because the People had, inter alia, failed to provide timely disclosure of underlying disciplinary records and the minutes of Lt. Ruiz's incredible testimony in the Harris case. In response to the motions, the People argued, among other things, that the Supreme Court had improperly invalidated the August 17, 2022 COC and the September 19, 2022 supplemental COC, and that the December 6, 2022 second supplemental COC was valid. The People further argued that the LEOW letters were sufficient to satisfy their discovery obligations under CPL 245.20(1)(k), and [*4]that they were not required to turn over all underlying documents because it would create an untenable burden.
In an order dated May 3, 2023, the Supreme Court granted the defendants' motions. The court determined that since the defendants were arraigned on April 2, 2022, and the first COC was filed on August 17, 2022, 138 days were chargeable to the People. The court held that the time period between August 18, 2022, until the decision on the omnibus motions on November 17, 2022, was excludable due to motion practice and charged 0 days to the People. The court determined that, in the time period that followed, from November 17, 2022, until March 1, 2023, the People failed to turn over required discovery or file a valid COC and therefore 101 days were chargeable to the People. The court charged the People with a total of 242 days. The court noted that the People specifically had been directed to turn over certain discovery to the defense, including underlying records related to police officer witnesses and underlying records for the case in which Lt. Ruiz's testimony was found to be incredible. The court further noted that the People did not detail any of their efforts to obtain the underlying records, nor did the People make an application to the court to request time be excluded while they worked to obtain the documents that they were directed to disclose. The court stated that although the People had turned over 100 pages of underlying documents related to Lt. Ruiz on December 14, 2022, they had filed their second supplemental COC on December 6, 2022, before those materials were disclosed, and that the transcript of the hearing where Lt. Ruiz's testimony was found to be incredible was not turned over until January 31, 2023. The court determined, therefore, that the December 6, 2022 second supplemental COC was invalid and that any statements of readiness made by the People were also invalid. Since the People were charged with 242 days, which exceeded the six months allowed under CPL 30.30(1)(a), the court granted the defendants' motions, inter alia, to dismiss the indictment. The People appeal.
II. The Appeal
On appeal, the People contend that the Supreme Court erred in invalidating each of their COCs and granting the defendants' motions. The People argue, inter alia, that the LEOW letters they disclosed to the defendants, which summarized the police officers' misconduct, satisfied the People's obligations under CPL 245.20(1)(k), and that neither the underlying records pertaining to the officers' disciplinary history nor the hearing transcript or other records for the case in which Lt. Ruiz's testimony was found to be incredible were required to be disclosed pursuant to CPL 245.20(1)(k) because they were not related to the subject matter of the case. The People further contend that the court should not have invalidated the People's August 19, 2022, September 19, 2022, and December 6, 2022 COCs because they were filed in good faith and with due diligence. The People also contend that the disclosure of transcripts of unrelated court proceedings concerning prosecution witnesses, even where they bear on the credibility of those witnesses, are not in the People's possession or control and that the LEOW letters were sufficient to satisfy the People's discovery obligations. In response, the defendants contend that the court properly invalidated the People's COCs because the People failed to satisfy their discovery obligations under CPL 245.20(1)(k) and that none of the COCs were not filed in good faith and with due diligence.
III. Discussion
A. Speedy Trial Requirements/Proper Statement of Readiness and Valid Certificate of Compliance
When a defendant is charged with a felony, the People are required to be ready for trial within six months of the commencement of the criminal action (see CPL 30.30[1][a]; People v Sinistaj, 67 NY2d 236; People v McPhaul, 227 AD3d 1111, 1111). Where, as here, "the defendant has shown the existence of a delay greater than six months, the burden of proving that certain periods within that time should be excluded falls upon the People" (People v Perkins, 175 AD3d 1327, 1327 [internal quotation marks omitted]; see People v Santos, 68 NY2d 859, 861).
In 2019, the New York State Legislature adopted significant reforms that repealed CPL article 240 and enacted CPL article 245 in its place, which imposes new automatic disclosure requirements and compliance mechanisms applicable to both the prosecution and defense (see id. § 245.20).
To incentivize the People's compliance with the new discovery procedures, the legislature "tethered the People's CPL article 245 discovery obligations to CPL 30.30's speedy trial requirements" (People v Bay, 41 NY3d 200, 209; see CPL 30.30 [5]). Specifically, CPL 245.50(3) states that "[n]otwithstanding the provisions of any other law" and "absent an individualized finding [*5]of special circumstances in the instant case by the court before which the charge is pending, the prosecution shall not be deemed ready for trial for purposes of section 30.30 of this chapter until it has filed a proper certificate pursuant to [CPL 245.50(1)]." Further, CPL 30.30(5), which was added in the 2019 legislation, directs that "'any statement of trial readiness must be accompanied or preceded by a certification of good faith compliance with the disclosure requirements of [CPL] 245.20'" (People v Gaskin, 214 AD3d 1353, 1354, quoting CPL 30.30[5] [alteration omitted]; see L 2019, ch 59, § 1, part KKK; CPL 245.50[1]). "The [certificate of compliance] 'shall state that, after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery'" (People v Bay, 41 NY3d at 209, quoting CPL 245.50[1]). "A statement of readiness at a time when the People are not actually ready is illusory and insufficient to stop the running of the speedy trial clock" (People v England, 84 NY2d 1, 4). Moreover, "a valid certificate of compliance and readiness declaration will not be rendered illusory by subsequent diligent disclosures made in good faith" (People v McCarty, 221 AD3d 1360, 1362; see CPL 245.50[1]; 245.60).
B. New Discovery Obligations - CPL 245.20 "Automatic Discovery"
This case hinges upon whether the Supreme Court correctly determined that the People had failed to satisfy their discovery obligations under CPL 245.20(1)(k), and therefore that the People had failed to file a proper COC to stop the running of the speedy trial clock. The language at issue requiring resolution is what is qualified by the language "that relate to the subject matter of the case" as set forth in CPL 245.20(1).
"Discovery in criminal actions is now governed by the new CPL article 245, which was enacted as part of sweeping criminal justice reform legislation" enacted by the New York State Legislature in 2019 (People v Bonifacio, 179 AD3d 977, 977-978). These changes to the discovery laws, which took effect on January 1, 2020, were part of a broader criminal justice reform package aimed at creating a more transparent and equitable criminal justice system by restructuring disclosure obligations and compliance mechanisms in criminal cases (see generally CPL art 245; L 2019, ch 59, § 1, part LLL, §§ 1, 2).
Experts and legal practitioners have urged New York State to reform its criminal discovery rules for more than 45 years. The Legislature last enacted major revisions to the discovery rules approximately 45 years ago, in 1979 (see New York State Bar Association, Report of the Task Force on Criminal Discovery at 1-2 [2015]). It is vital to the criminal justice system that we maintain a commitment to justice, equality, and due process as that commitment reinforces the rule of law and protects the rights and dignity of all individuals. In that quest, criminal discovery procedures have been revised to create transparency, affording those charged with the ability to make informed decisions and create a greater opportunity for accurate justice and an even playing field. "Broader pretrial discovery enables the defendant to make a more informed plea decision, minimizes the tactical and often unfair advantage to one side, and increases to some degree the opportunity for an accurate determination of guilt or innocence" (People v Copicotto, 50 NY2d 222, 226; see CPL 245.10).
As part of the reforms, CPL article 245 provides for "automatic" disclosure by the People to the defendant of certain specified material and information. CPL 245.20, titled "[a]utomatic discovery," provides in part that the prosecution "shall disclose to the defendant . . . all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control" (id. § 245.20[1]; see People v Bay, 41 NY3d at 208). That includes "[a]ll evidence and information, including that which is known to police or other law enforcement agencies acting on the government's behalf in the case, that tends to . . . impeach the credibility of a testifying prosecution witness" (CPL 245.20[1][k][iv]). Furthermore, CPL 245.20(7), titled "Presumption of openness," states that "[t]here shall be a presumption in favor of disclosure when interpreting [CPL 245.20(1)]."
As noted by the Court of Appeals in People v Bay, in 2014, the New York State Justice Task Force proposed reforms to the discovery regime "in light of concerns that available discovery is 'highly circumscribed' and 'often comes too late to permit both sides to investigate facts fully and make informed decisions before trial'" (People v Bay, 41 NY3d at 208, quoting Report of the New York State Justice Task Force of its Recommendations Regarding Criminal Discovery Reform at 5 [2014] [hereinafter Task Force Report]). "Requiring early and broader disclosure, the Task Force concluded, would facilitate expeditious resolution of cases and better enable defense [*6]counsel to investigate and prepare for trial" (id.; see Task Force Report at 3; see also New York State Bar Association, Report of the Task Force on Criminal Discovery at 2). "Over the next few years, the legislature considered various discovery reform bills, and in the course of doing so, legislators noted that the existing scheme necessitated extensive exchanges of discovery demands, motions, and responses, and raised concerns about the limits on disclosure and the impact of discovery delays" (People v Bay, 41 NY3d at 208, citing Assembly Mem in Support of 2019 NY Assembly Bill A1431; Assembly Mem in Support of 2017 NY Assembly Bill A4360A; NY Assembly Debate on 2019 NY Assembly Bill A2009C, Mar. 31, 2019 at 336, 378, 443-444; NY Senate Debate on 2019 NY Senate Bill S1509C, Mar. 31, 2019 at 2688-2690, 2714, 2802).
The automatic discovery statute specifically provides that "[t]he prosecution shall disclose to the defendant . . . [a]ll evidence and information . . . that tends to . . . impeach the credibility of a testifying prosecution witness" (CPL 245.20[1][k][iv]). Significantly, CPL 245.20(1)(k) further provides that "[i]nformation under this subdivision shall be disclosed . . . irrespective of whether the prosecutor credits the information."
This appeal concerns CPL 245.20(1)(k)(iv), which requires that the People disclose "[a]ll evidence and information" that "tends to . . . impeach the credibility of a testifying prosecution witness." "In resolving a question of statutory interpretation," the "primary consideration . . . is to ascertain and give effect to the intention of the Legislature" (People v Bay, 41 NY3d at 211 [internal quotation marks omitted]; see People v Galindo, 38 NY3d 199, 203). "The starting point in determining legislative intent is to give effect to the plain language of the statute itself—the clearest indicator of legislative intent" (People v Schneider, 37 NY3d 187, 196 [internal quotation marks omitted]; see People v Riche, 225 AD3d 30, 36). "[C]ourts should construe unambiguous language to give effect to its plain meaning" (Matter of Mestecky v City of New York, 30 NY3d 239, 243 [internal quotation marks omitted]; see Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660).
"When the statutory language at issue is but one component in a larger statutory scheme, it must be analyzed in context and in a manner that harmonizes the related provisions and renders them compatible" (Matter of Mestecky v City of New York, 30 NY3d at 243 [internal quotation marks omitted]; see Matter of M.B., 6 NY3d 437, 447). Furthermore, "'meaning and effect should be given to every word of a statute' and . . . an interpretation that renders words or clauses superfluous should be rejected" (Matter of Mestecky v City of New York, 30 NY3d at 243, quoting Leader v Maroney, Ponzini & Spencer, 97 NY2d 95, 104).
CPL 245.20(1) provides:
"Initial discovery for the defendant. The prosecution shall disclose to the defendant, and permit the defendant to discover, inspect, copy, photograph and test, all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control, including but not limited to" (emphasis added).
Black's Law Dictionary defines "subject matter" as the thing in controversy or the matter spoken or written about. Here, the credibility of Lt. Ruiz is related to the subject matter of the case. The statute then enumerates 21 categories of material subject to disclosure, under subdivisions "[a]" through "[u]" (see People v Bay, 41 NY3d at 208), "and provides that materials possessed by a New York State or local police or law enforcement agency are deemed in the People's possession for purposes of the discovery requirements (see CPL 245.20[2])" (id. at 208-209).
The People argue that the statute should be strictly interpreted to mean that any evidence or items falling within the enumerated categories under CPL 245.20 relate only to the subject matter of the case.
CPL 245.20(1)(k) uniquely provides that the prosecution shall disclose "[a]ll evidence and information, including that which is known to police or other law enforcement agencies acting on the government's behalf in the case, that tends to . . . (iv) impeach the credibility of a testifying prosecution witness" (emphasis added). The use of the words "all evidence and information" in this subparagraph supports that the Legislature intended to provide the broadest discovery possible to defendants in the area of impeachment material. Limiting the application of this particular subparagraph to impeachment material that derives from the subject matter of the [*7]charge(s) against the defendant, rather than the subject matter of the case alone, would contravene the clear intent of this legislative provision. For impeachment purposes, all that is required for impeachment material to be "related to the subject matter of the case" is that it relate to the credibility of a witness in the case.
The Legislature could have, but chose not to, include language in subparagraph (iv) of CPL 245.20(1)(k) limiting discovery of impeachment evidence to materials related to the facts underlying the charges against the defendant. This can be further illustrated by looking at the wording of the subparagraph in its entirety. CPL 245.20(1)(k) requires that the People disclose:
"All evidence and information, including that which is known to police or other law enforcement agencies acting on the government's behalf in the case, that tends to: (i) negate the defendant's guilt as to a charged offense; (ii) reduce the degree of or mitigate the defendant's culpability as to a charged offense; (iii) support a potential defense to a charged offense; (iv) impeach the credibility of a testifying prosecution witness; (v) undermine evidence of the defendant's identity as a perpetrator of a charged offense; (vi) provide a basis for a motion to suppress evidence; or (vii) mitigate punishment. Information under this subdivision shall be disclosed whether or not such information is recorded in tangible form and irrespective of whether the prosecutor credits the information" (emphasis added).
It is significant that subparagraphs (i), (ii), (iii), and (v) of CPL 245.20(1)(k) all contain language limiting disclosure of those materials "as to a charged offense" (see id. § 245.20[1][k][i], [ii], [iii], [v]), while subparagraph (iv) does not include such a limitation. The Legislature's omission of any such limiting language from subparagraph (iv) "should be construed as indicating that the exclusion was intentional" (Matter of Matthew L., 65 AD3d 315, 321; see McKinney's Cons Laws of NY, Book 1, Statutes § 74).
In our view, it is apparent that the Legislature did not intend to create an additional layer of analysis, to be employed by the prosecution, when determining what is "related to the subject matter of the case" in regard to impeachment material. However, in this case, no such analysis is necessary with regard to the discovery of the underlying documents related to the case in which Lt. Ruiz's testimony was found to be incredible. Indeed, and significantly, the Legislature expressly provided, within CPL 245.20(1)(k), that "[i]nformation under this subdivision shall be disclosed . . . irrespective of whether the prosecutor credits the information" (id. [emphasis added]). The natural interpretation of CPL 245.20(1)(k), read in its entirety, is that all evidence and material that tends to impeach the prosecution witnesses must be disclosed. This, of course, also comports with the presumption of openness built into CPL article 245 (see id. § 245.20[7]).
Here, the information pertaining to the case in which Lt. Ruiz's testimony was found to be incredible is material subject to disclosure pursuant to CPL 245.20(1)(k)(iv). In People v Harris, the case in which Lt. Ruiz had testified, the defendant was a passenger in a vehicle that was stopped for an alleged traffic infraction (see People v Harris, 192 AD3d at 153). During the encounter, Lt. Ruiz recovered a single credit card with an alleged burn mark on it and a stack of approximately 15 other credit cards from the defendant (see id.). At the suppression hearing, Lt. Ruiz testified, inter alia, that while standing outside the vehicle he could "read the defendant's name on the card," which was laying on the center console, and that "[h]e could also see that the fourth-to-last digit on the credit card number appeared to have been altered from a numeral 'one' to a numeral 'four'" (id. at 159). Lt. Ruiz further testified that "based on his 'training and experience,'" he believed that the card was possibly altered even though he never was previously involved in an arrest for a burned credit card (id.). He also testified that "while he was standing next to the passenger side of the vehicle, he also noticed 'a large amount of credit cards in [the defendant's] pocket'" (id.). This Court determined that Lt. Ruiz's testimony conflicted with the testimony of another police witness in multiple respects, including the circumstances under which the credit cards were recovered from the defendant's pocket (see id. at 164). This Court also concluded that, even viewed in isolation, the testimony given by both police witnesses was "'implausible and contrived'" and that "[m]ost egregious was [Lt.] Ruiz's testimony that he could read the numbers on the card on the center console and see a stack of cards inside an envelope inside the defendant's pocket, all while standing outside of [the] vehicle. This testimony, on its face, was 'so improbable as to be unworthy [*8]of belief'" (id., quoting People v Aguirre, 220 AD2d 438, 439). This Court held that "under the circumstances, we decline to credit any of the testimony of the People's witnesses" (id. at 165).
As the defendants correctly contend, since, in People v Harris, Lt. Ruiz was one of the officers who stopped the vehicle and then claimed that he could read the numbers on a credit card while he stood outside the vehicle, the underlying records related to that case were relevant to this case, where Lt. Ruiz also claimed that after one of the defendants (who was sitting in the driver's seat) got out of the car, Lt. Ruiz observed and recovered a loaded firearm that was on the floor directly below the driver's seat inside the car. As the defendants correctly maintain, this was proper impeachment evidence, and therefore, the underlying records should have been disclosed (see People v Smith, 27 NY3d 652, 662; People v Watson, 163 AD3d 855, 860; People v Enoe, 144 AD3d 1052, 1054).
The People contend that in order to demonstrate that impeachment material relates to the subject matter of the case, a defendant must demonstrate that the misconduct occurred during the investigation of the case or that the misconduct related to the charges against the defendant or to any potential defense that the defendant may assert in the case. The People further contend that under Brady v Maryland (373 US 83), unless police misconduct is related to the prosecution of a particular case, the People have no duty to learn of it, citing to People v Garrett (23 NY3d 878). The defendants contend that People v Garrett, decided before the enactment of CPL article 245, addressed Brady violations, but that CPL article 245 requires greater disclosure than Brady. This Court agrees that People v Garrett was based on the disclosure requirements set forth in Brady v Maryland, relying on the materiality requirement. People v Garrett is distinguishable, in that it involved a civil action of which only the prosecution witness had knowledge, as the Court of Appeals had found that the People had demonstrated that they were not aware of the action (see People v Garrett, 23 NY3d at 891).
In this case, the People had actual knowledge of the case in which Lt. Ruiz's testimony had been found to be incredible. The People had defended an appeal in that matter, and knew of this Court's opinion and order finding Lt. Ruiz's testimony in that case to be incredible. The People mentioned the case in the first Ruiz letter, which was provided in July 2022, but gave only general, and partially inaccurate, information about the case. In the second Ruiz letter, which was provided in September 2022, the People corrected the inaccurate information from the first Ruiz letter, but again failed to provide the name or docket number of the case. It was only in the third Ruiz letter, provided in December 2022, that the People finally disclosed information identifying the case. The People filed their second supplemental COC on December 6, 2022, but did not turn over underlying documents related to People v Harris until December 14, 2022, and did not provide the transcript of Lt. Ruiz's testimony until January 31, 2023. The People did not file another supplemental COC. Moreover, the defendants had made a specific request for the underlying documents regarding the case, and the Supreme Court had specifically directed the People to turn over the underlying documents related to Lt. Ruiz's testimony. The People had multiple opportunities to establish that they had exercised due diligence. There were court appearances on January 5, 2023, January 24, 2023, and February 8, 2023, but the People failed to elaborate on their efforts to locate the transcript and the People never explained the reason for the delay in disclosing the underlying records or the transcript (see People v Bay, 41 NY3d at 215). Therefore, the People's reliance on any argument that they lacked knowledge, or possession and control, of the material is unavailing.
This Court holds that the underlying records in the case in which Lt. Ruiz's testimony was found to be incredible did relate to the subject matter of this case for impeachment purposes (see People v Smith, 27 NY3d at 662; People v Watson, 163 AD3d at 860; People v Enoe, 144 AD3d at 1054). Here, the underlying records pertaining to Lt. Ruiz's incredible testimony, including the transcript of his testimony, did relate to the subject matter of the case because the material went toward the weight of the credibility of the witness and could be used for impeachment purposes. Therefore, the People were required to provide the records.
Based upon the plain meaning of the text of CPL 245.20(1)(k)(iv), and considering the statute in the larger statutory scheme of CPL article 245, as well as the legislative history of, and impetus for the criminal justice reforms, we therefore hold that records that may "tend[ ] to . . . impeach the credibility of a testifying prosecution witness" are related to the subject matter of the case, and must be disclosed as part of automatic discovery (id. § 245.20[1][k][iv]).
Here, we hold that, pursuant to CPL 245.20(1)(k), the People were required, and [*9]failed to timely provide underlying records pertaining to People v Harris, including the minutes from the hearing in which Lt. Ruiz's testimony was found to be incredible. Accordingly, the Supreme Court properly determined that the December 6, 2022 second supplemental COC was not valid and therefore did not stop the running of the speedy trial clock (see id. § CPL 245.50[3]). Before filing the December 6, 2022 second supplemental COC, the People failed to provide the defendants with "[a]ll evidence and information" that tends to "impeach the credibility of a testifying prosecution witness" (see id. § 245.20[1][k][iv]). Although these records were belatedly disclosed, the People failed to demonstrate that they exercised due diligence and made reasonable inquiries prior to filing the second supplemental COC (see People v Bay, 41 NY3d at 211). Accordingly, the court properly determined that the second supplemental COC was improper, properly struck the statement of readiness as illusory (see CPL 245.50[3]; People v Bay, 41 NY3d at 216), and properly granted the defendants' motions, inter alia, pursuant to CPL 30.30 to dismiss the indictment.
The parties' remaining contentions either are not properly before this Court or need not be reached in light of our determination.
Accordingly, the order is affirmed.
DILLON, J.P., MILLER and VENTURA, JJ., concur.
ORDERED that the order is affirmed.
ENTER:
Darrell M. Joseph
Clerk of the Court