People v Zachary L. (2025 NY Slip Op 50903(U))

[*1]

People v Zachary L.

2025 NY Slip Op 50903(U)

Decided on June 3, 2025

Criminal Court Of The City Of New York, New York County

Coleman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 3, 2025
Criminal Court of the City of New York, New York County

The People of the State of New York, Plaintiff,

against
Zachary L., Defendant.

CR-033620-24NY

Alvin L. Bragg, Jr., District Attorney, New York County (Robert Wirtz of counsel), for plaintiff. 
Twyla Carter, The Legal Aid Society, New York City (Santino Casola of counsel), for defendant.

Ilona B. Coleman, J.

The defendant moves this court to find the People's certificate of compliance and statement of readiness invalid and to dismiss his case pursuant to CPL § 170.30 (1) (e). Specifically, Mr. L. argues that the People failed to satisfy their discovery obligations under CPL § 245.20 (1), that their certificate of compliance was therefore invalid, and that the People therefore violated his right to a speedy trial under CPL § 30.30 (1). The People oppose.
I. Relevant Facts
The defendant was arrested on a charge of forcible touching and arraigned in criminal court on November 17, 2024. The case was adjourned to January 8, 2025 for conversion. On that date, the criminal court complaint was deemed an information, but the People had not filed a certificate of compliance ("COC") and were not ready for trial. The case was adjourned to February 27, 2025 for trial.
The People make no representations about when they began gathering discovery in this case. On January 30, 2025, the People began serving discovery and provided "over 100 items and materials" to the defense, including police paperwork, activity logs, body-worn camera footage, the NYPD investigation file, surveillance footage, and some impeachment materials for two testifying police witnesses. On February 3, 2025, the People produced contact information for the complainant and her sister, an eyewitness, and the next day they filed an automatic disclosure form ("ADF"), a COC, and a certificate of readiness ("COR").
On February 18, 2025, defense counsel emailed the People listing what he believed to be missing discovery. The People responded via email the next day stating they would get back to him shortly. 
During the February 27, 2025 court appearance, the People answered ready for trial, and the defense answered not ready. 
On March 7, 2025 the People responded via email to the substance of defense counsel's [*2]discovery objections. The People acknowledged that one item — an arrest checklist — had inadvertently been left out of the discovery production and promptly provided it to the defense. For most of the requested items, the People stated either that they did not know whether they existed or that they were not discoverable. The People did not respond to the defendant's request for a chain of custody report for a knife recovered from the defendant at the time of his arrest. 
The defendant's motion to dismiss followed. In his motion, the defendant alleges that the People's COC was invalid because the People filed it without first disclosing an arrest checklist, contact information for a second sister alleged to be a witness, a pre-arrest notification report, a WINQ report, an arraignment card, a chain of custody report, roll call logs, and various impeachment materials for two police witnesses. The People oppose, arguing that these items either do not exist, are not discoverable, or do not bear on the People's due diligence and ultimately the validity of their COC. 
II. Validity of the People's COC
Under CPL § 245.50 (1), the People must affirm in their COC that, "after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery." To determine whether a COC is valid, the court must first determine whether the People have failed to disclose any material or information subject to discovery. Even if the People have not disclosed every discoverable item, a COC is valid if the prosecution "has exercised due diligence and made reasonable inquiries to ascertain the existence of material and information subject to discovery" (People v Bay, 41 NY3d 200, 211 [2023] [quotation marks omitted]).
1. The People's Compliance with CPL § 245.20
CPL § 245.20 (1) defines the discovery obligations the People must satisfy before filing a COC. It requires disclosure of "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control" (CPL 245.20 [1]). The statute then provides a non-exhaustive list of categories of items and information that fall within that broad definition (see id. [requiring discovery "including but not limited to" the enumerated items]). 
While material is discoverable only if it "relate[s] to the subject matter of the case" (see People v McCarty, 221 AD3d 1360, 1362 [3d Dept 2023] [disciplinary file did not in its entirety "relate to the subject matter of the case"]), that phrase is not nearly as limiting as the People suggest (see, e.g., People v Coley, — NYS3d &mdash, 2025 NY Slip Op 01945 [2d Dept 2025] [holding that a witness' credibility relates to the subject matter of a case]). The People argue that "relate to" should be interpreted as synonymous with "relevant to," and they argue that "the subject matter of the case" is strictly limited to the facts of the alleged criminal incident, the investigation of the crime, and the arrest of the defendant. This interpretation is implausible as a matter of plain language, statutory structure, and legislative intent. 
First, the statute is written in broad language (see CPL 245.20 [1]; see also CPL 245.20 [7] [instructing that CPL 245.20 must be interpreted with "a presumption in favor of disclosure"]). Contrary to the People's contention, "relate to" is broader as a matter of plain language than legal relevance, which is one specific type of "relating" (see NY Statutes § 94 [*3]["statutory language is generally construed according to its natural and most obvious sense"]). Indeed, CPL § 245.20 uses "relevant to" in other contexts to refer to a narrower body of material (compare CPL 245.20 [1] [c], [d], [e], [l], 245.20 [4] [using "relevant to"] with CPL 245.20 [1], [h], [o], [u], CPL 245.20 [2] [using "relate to"]). This court cannot ignore the legislature's decision to use different words in different contexts (see NY Statutes § 97 ["all parts of an act are to be read and construed together to determine the legislative intent"]). Similarly, "the subject matter of the case" encompasses more than the facts of the underlying criminal incident. As a matter of plain language, the "subject matter of the case" must at minimum include anything that could properly be commented upon in a closing argument in a pretrial hearing or trial: not only the facts of the alleged criminal activity and the police investigation, but also the qualifications and credibility of witnesses, the authenticity, weight, and testing of evidence, and any defense the defendant may decide to assert. Again, the breadth of the phrase is confirmed by the statute's use of narrower language in other contexts (see CPL 245.20 [1] [c], [d], [e]).
The structure of CPL § 245.20 (1) also supports this plain-language reading (see People v Edwards, 74 Misc 3d 433 [Crim Ct, NY County 2021]). The statute begins with a broad rule of discoverability ("all items and information that relate to the subject matter of the case") followed by an illustrative list (see CPL 245.20 [1] [requiring discovery "including but not limited to" the enumerated items]). The statute's illustrative list defines what, to the legislature, "relate[s] to subject matter of the case" (Edwards, 74 Misc 3d at 439; see also People v Pardo, 81 Misc 3d 858, 863-864 [Crim Ct, Bronx County 2023]). Material related to the subject matter of the case thus includes information about and documents related to the alleged criminal activity and related police activity (see, e.g., CPL 245.20 [1] [a], [b], [e], [n], [r]); testifying witnesses, including not only the substance of their testimony but also their qualifications, credibility, and even contact information (see, e.g., CPL 245.20 [1] [c], [f], [k] [iv], [l], [q])[FN1]
; the authenticity and weight of evidence (see, e.g., CPL 245.20 [1] [j], [s]); and any defense the defendant may assert (see, e.g., CPL 245.20 [1] [k]). 
The history and purpose of the statute further support such a broad reading (see Coley, 2025 NY Slip Op 01945, *4-6; see also Edwards, 74 Misc 3d at 438). Enacted as "part of a broader criminal justice reform package aimed at creating a more transparent and equitable criminal justice system," article 245 was designed to address concerns that discovery in New York was often "highly circumscribed" and provided too late (Coley, 2025 NY Slip Op 01945, *5, *6). These concerns were especially acute in the context of disclosures required under Brady v Maryland (373 US 83 [1963]) and its progeny. The legislature thus specifically instructed that potentially exculpatory, mitigating, and impeachment materials must be disclosed immediately upon their receipt, even ahead of the deadlines set forth in CPL § 245.10 (CPL 245.20 [1] [k]). The People's interpretation of CPL § 245.20 (1) — which would exempt a large swath of constitutionally mandated disclosures from automatic discovery (see People v. Lewis, 78 Misc 3d 877, 880 [Sup Ct, Kings County 2023]) — runs in the face of the history and purpose of [*4]article 245, which was to provide comprehensive and prompt discovery, especially for potentially favorable material (see Edwards, 74 Misc 3d at 440-441).
With these principles in mind, the court will consider each alleged discovery violation. Police Paperwork
The defendant argues that several undisclosed items — the WINQ report, the pre-arraignment notification report, the arrest checklist, the arraignment card, roll call logs, and a chain of custody report — are discoverable under CPL § 245.20 (1) (e). That paragraph makes discoverable "[a]ll statements . . . made by persons who have evidence or information relevant to any offense charged or to any potential defense thereto, including all police reports, notes of police and other investigators, and law enforcement agency reports." 
A few of the items at issue can be dealt with expeditiously: neither a pre-arrest notification report nor a WINQ report was created in this case, and the parties agree that the arrest checklist was discoverable. The remaining items, however, require closer analysis.
First, the parties disagree about whether the arraignment card is a police document — and therefore discoverable under CPL § 245.20 (1) (e) — or a court document outside the scope of that provision. The court need not resolve that dispute. Regardless of its origin, the document contains information that is related to the subject matter of the case and was undisputedly in the People's possession, and it is therefore discoverable under the broad umbrella of CPL § 245.20 (1), even if not specifically under paragraph (e).
Second, roll call logs are not discoverable in this case because, on the sparse record before the court, there is no basis to conclude that roll call logs relate to the subject matter of the case (see CPL 245.20 [1]). Roll call logs are administrative documents that list all officers assigned to a shift, along with their status (present, sick, absent) and post. The defendant's argument that roll call logs "list the officers involved in the investigation" is true, but only trivially. They contain those officers' names but say nothing about their involvement in the case.
Finally, the chain of custody report for the knife found on the defendant during his arrest is discoverable. The report almost certainly contains "statements" related to the case — specifically, information about the recovery and storage of evidence — made by "persons who have evidence or information relevant to any offense charged" — that is, NYPD officers involved in the defendant's arrest (CPL 245.20 [1] [e]). The People argue that the report is not discoverable because the knife is not the subject of a charge in this case and, therefore, the chain of custody report would not contain "relevant" information. This argument fails for two reasons. First, as discussed above, the standard for discoverability is whether an item or information "relate[s] to the subject matter of the case," not whether it is relevant to a material fact. Here, police actions at the time of the defendant's arrest, and their subsequent handling of vouchered evidence, are "related to the subject matter of the case." Second, the People cannot state that the report contains no "relevant" information because they have not actually seen the report, despite it being in NYPD's possession (see People v Silva-Torres, 81 Misc 3d 1121 [Crim Ct, NY County 2023] [explaining that where "[t]he People control all of the relevant information," they bear the burden to demonstrate material is not discoverable]). The report is statutorily deemed to be in the People's possession (CPL 245.20 [2]), and it should have been disclosed prior to the filing of a COC.
Witness Contact Information
Next, the defendant argues that the People did not provide sufficient witness information under CPL § 245.20 (1) (c). The People disclosed information for one of the complainant's sisters who was an eyewitness to the alleged incident, but they did not disclose information for another sister who joined them shortly thereafter. The People's argument that the latter sister was not a witness to the incident or its immediate aftermath misconstrues the statute. The relevant question is not whether the person was an eyewitness but whether she has "evidence or information relevant to any offense charged" (CPL 245.20 [1] [c]). Here, the People's own factual allegations establish that the sister had such information. Having joined the complainant as she was "confronting the defendant . . . and flagging down officers for assistance," the sister would almost certainly have heard the complainant's outcry statements about the incident and observed the defendant's actions while the police were being summoned. The People do not deny that they had the sister's name and contact information, and even if they did not, it was readily available to them (see CPL 245.20 [2]). Therefore, the People should have disclosed the sister's contact information before filing their COC. 
Potential Impeachment Materials
Lastly, the defendant argues that the People have failed to disclose police disciplinary records discoverable under CPL § 245.20 (1) (k) (iv). Specifically, the defendant argues, the People turned over improperly redacted IAB logs; failed to disclose attachments to several IAB logs; and failed to disclose any materials for one substantiated allegation. In response, the People argue that none of these materials "relate to the subject matter of the case" in that the alleged misconduct did not take place during the investigation and arrest of the defendant; that the materials do not "tend to impeach" because they are unsubstantiated or irrelevant to the officer's credibility; and that the challenged redactions are authorized by statute.
CPL § 245.20 (1) (k) (iv) requires disclosure of "[a]ll evidence and information . . . that tends to . . . impeach the credibility of a testifying prosecution witness." There is no requirement that an instance of police misconduct have a specific factual nexus with a defendant's investigation or arrest to be discoverable (People v Coley, — NYS3d &mdash, 2025 NY Slip Op 01945, 8-9 [2d Dept. 2025]). Rather, "all that is required for impeachment material to be 'related to the subject matter of the case' is that it relate to the credibility of a witness in the case" (id. at *7). The first Appellate Division decision to explicitly analyze what it means for impeachment materials to "relate to the subject matter of the case," People v. Coley emphatically rejected the People's argument that law enforcement impeachment materials are only discoverable if they have a specific factual nexus with the defendant's charges (id. at *8-9). Rather, Coley held that any material that "tends to impeach" a testifying witness is by definition related to the subject matter of the case (id.). The People's attempts to explain Coley away are unconvincing.[FN2]

Thus, while a testifying officer's full disciplinary record is not automatically discoverable (see People v McCarty, 221 AD3d 1360, 1362 [3d Dept 2023], People v Johnson, 218 AD3d 1347 [4th Dept 2023]), portions of it that "tend to impeach" must be disclosed (Coley, 2025 NY Slip Op 01945, *7; see also Matter of Jayson C., 200 AD3d 447 [1st Dept 2021]; People v Rodriguez, 77 Misc 3d 23 [App Term, 1st Dept 2022]). Where a disciplinary matter "tends to impeach" an officer, a summary of the misconduct is not sufficient to satisfy the People's discovery obligations (Jayson C., 200 AD3d at 448-449). Rather, "[a]ll evidence and information" related to that matter in the People's possession must be provided to the defense (CPL 245.20 [1] [k] [iv]).
The first question, then, is whether each disciplinary matter at issue "tends to impeach" the testifying officers (CPL 245.20 [1] [k] [iv]). The statute sets a broad standard: any tendency to impeach is sufficient to trigger the People's obligation to disclose. Most courts therefore interpret the statute to impose a bright-line rule requiring the disclosure of all police disciplinary matters that result in either "substantiated" and "unsubstantiated"[FN3]
findings (see People v Lithgow, 224 NYS3d 878, 884 [Crim Ct, NY County 2024] [listing numerous decisions from other trial courts reaching the same conclusion]). This court will adopt the same approach. Given the statute's broad language and presumption of disclosure, we reject the People's argument that CPL § 245.20 (1) empowers them to make fine-grained unilateral determinations about the evidentiary value of potentially discoverable materials (see CPL 245.20 [1], [7]).[FN4]

In this case, the People designated two testifying police witnesses, with five substantiated and unsubstantiated IAB matters between them. All five of these matters have some tendency to impeach the testifying officers and are therefore subject to disclosure. 
The next question is whether the People have disclosed "[a]ll evidence and information" in their possession that "tends to impeach" (CPL 245.20 [1] [k]; see also Jayson C., 200 AD3d at 448-449). For three of the IAB matters, the People provided IAB logs with redactions and without attachments. For one, they provided an unredacted IAB log but again without attachments. For the last, they provided only a summary, with no underlying documents at all. The undisclosed attachments include audio recordings created in the course of the investigation, video of one of the incidents, police documents relied upon in the course of the IAB investigation, and disciplinary election reports for the substantiated allegations. 
On these facts, the People have not satisfied their discovery obligations. A redacted IAB log without attachments documenting the allegations and investigation is essentially a summary — exactly what the First Department indicated was insufficient in Jayson C. (200 AD3d at 448-449). While the People suggest that the attachments would be duplicative of the IAB log, they do not offer any argument based in the language of CPL § 245.20 (1) to support their claim that 245.20 (1) (k) (iv) does not encompass IAB log attachments. Further, the assertion that the attachments would be duplicative is speculative: though the attachments are constructively in the People's possession, the People have not reviewed them and have no specific knowledge of their contents.
The People's claim that the IAB log redactions are statutorily permitted is likewise mistaken. Redactions are permitted only with a protective order or as authorized in CPL § 245.20 (6), which allows the redaction of social security numbers and tax numbers, or § 245.20 (5), which allows either party to withhold portions of discoverable materials if those portions are not specifically discoverable and if good cause exists for withholding them. Certainly, the People's claim that they have free reign to redact any piece of information that they determine is not independently discoverable is without basis in the statute. The redactions here go beyond social security numbers and tax numbers and include such crucial information as the names and contact information of the people who made the allegations of misconduct against the testifying officers. The People have not even claimed, much less established, that they believed that good cause existed to withhold that information pursuant to CPL § 245.20 (5). In fact, the People did not perform these redactions themselves but informed the court in an email exchange that they received the materials already redacted from the NYPD.
Overall, the People should have disclosed the unredacted IAB logs and their attachments prior to filing their COC. 
2. The People's Diligence and Reasonableness
Even where the People have not satisfied all of their discovery obligations, their COC will not be invalidated where they have "exercised due diligence and made reasonable inquiries to ascertain the existence of material and information subject to discovery" (Bay, 41 NY3d at 211 [quotation marks omitted]). In making this determination, the court must evaluate "the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (id. at 212).
This is not an especially complex case, and the amount of discovery involved is on the low end. The allegations include only a single act — a misdemeanor — against a single complainant. The case does not involve co-defendants, forensic analysis, expert testimony, [*5]search warrants, or a complicated police investigation. The People designated only four witnesses: the complainant, one eyewitness, and two police witnesses. 
The People's affirmation makes no representations about what efforts they made to obtain discovery and from whom. The People have not made any record, for example, about when or how they requested case documents from the NYPD. Rather than document their efforts to obtain records, the People merely lay out the timeline of their disclosures. They provided the bulk of their discovery on January 30, 2025, and the last remaining pieces a few days later — about two and a half months after the defendant's arraignment. The sparse record the People have made on this point is not in their favor. All they have told the court, essentially, is that they made their initial disclosures over a month after the statutory deadline, without any explanation for the delay (see CPL 245.20 [1] [a] [ii]).
With the important exception of impeachment materials, the People's disclosures were fairly complete, and their discovery violations have limited bearing on their diligence. First, the arrest checklist, while indisputably discoverable, was accidentally left out of the discovery folder shared with the defense. The People intended to share it with the defense and in fact believed that they had. When they learned of their error, they rectified it immediately. Next, while the arraignment card is technically discoverable, the People are correct that this is a document that the court distributes at arraignments as a matter of course to both the People and the defense. It is entirely understandable that the People, assuming the defense already had a copy, would not have included it in their disclosures. Similarly, the non-eyewitness sister's contact information is discoverable but — as an outcry witness who the People do not intend to call at trial, and who is not likely to have information helpful to the defense — not obviously so. 
The chain of custody report for the seized knife is a closer call. As a police report created in connection with the case against the defendant, it is obviously discoverable. The People do not offer any explanation for why it was not included with their initial disclosures, but it is understandable in this case why the People would not have noticed that they were missing this document: they do not intend to introduce the knife at hearing or trial, so its post-arrest handling would have been of little concern to them. That said, their response was insufficient when alerted that the document was missing. They state in their affirmation only that they "have inquired" with the arresting officer, without any details about when or by what means they made that inquiry, or whether they received any response.
As to the impeachment materials, the People have failed to demonstrate that they acted with due diligence. The People state that the Manhattan District Attorney's Office "processed more than 9,700 requests to the NYPD for law enforcement disciplinary materials," but they provide no information about what efforts were made in this case specifically. There is simply no indication in the People's affirmation of when or how the People requested disciplinary records from the NYPD, or what types of materials they requested.
Instead of attempting to show that they worked diligently to obtain the full NYPD disciplinary records, the People rely entirely on the argument that, right or wrong, they relied reasonably on what they call a "wealth of case law" supporting their position. Here, two questions must be answered. First, when the People withhold discoverable materials based on an incorrect interpretation of the law, does that reliance excuse their failure to disclose those materials? As the Court of Appeals explained in Bay, the "touchstone" for determining the validity of a COC is "[r]easonableness" (41 NY3d at 211-212), and this court thus concludes that the People may rely in good faith on a reasonable interpretation of the law without penalty (see [*6]CPL 245.50 [1] ["No adverse consequence . . . shall result from the filing of a certificate of compliance in good faith and reasonable under the circumstances"]).
The next question is whether the People's interpretation of the law was reasonable. "Reasonableness," of course, is context dependent, and CPL § 245.20 provides two important guiding principles for evaluating reasonableness in this context. First, the statute deems its own provisions to have "the force and effect of a court order" (CPL 245.20 [5]). Second, the statute explicitly instructs that "[t]here shall be a presumption in favor of disclosure when interpreting" the statute (CPL 245.20 [7]). The People's interpretation must therefore be judged against the standard of a reasonable person attempting to comply in good faith with a court order where the court has explicitly instructed that the terms of the order are to be read broadly (see Bay, 41 NY3d at 211 [defining "due diligence" as the "diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation"]). 
The People's interpretation of the law does not meet that standard. Even before Coley,[FN5]
the People's strained interpretation of appellate case law was not reasonable. First, the People read Jayson C. too narrowly, distorting its holding by ignoring its facts and specific outcome. In Jayson C., the Appellate Division reversed a Family Court order denying the defendant's request for underlying records for, among other things, factually unrelated NYPD disciplinary matters (see 200 AD3d at 448). In ordering the disclosure, the court explained that "[a] similarly situated defendant in a criminal proceeding would be entitled to access to the impeachment materials requested by appellant" (id. at 449). This language was necessary to the specific outcome — which was to grant the defendant's discovery motion in its entirety, not to remand for further analysis (id. at 447) — and was therefore part of the holding (see Buehler v Board of Sup'rs of Rensselaer County, 260 NY 268 [1932]).
Further, Johnson and McCarty do not clearly support the People's position. In Johnson, the Fourth Department held that the defendant "was not automatically entitled to the entirety of a police officer's personnel file as impeaching material . . . but rather only to the extent that the information related to the subject matter of the case" (218 AD3d at 1350 [quotations omitted, emphasis added]). The case did not, however, purport to examine what is and is not "related to the subject matter of the case" (see id.). In McCarty, the Third Department reached the same conclusion about disciplinary files: they are not automatically discoverable in their entirety, but only to the extent that they "relate to the subject matter of the case" — again, without explaining what that phrase means (221 AD3d at 1362 [emphasis added]; see also People v Macaluso, 230 AD3d 1158 [2d Dept. 2024] [same result as McCarty]). The only appellate case that supports the People's position directly is People v Earl (84 Misc 3d 44 [App Term, 2d Dept 2024]). [*7]However, Appellate Term cases from the Second Department are not binding on this court, and Earl — which relied on a broad reading of McCarty and Johnson and engaged in no statutory analysis — was not persuasive even before it was overruled (see Earl, 84 Misc 3d 44). 
In the CPL § 245.20 (1) context, the People should not be seeking out novel legal theories or outlier decisions to justify non-disclosure, and courts should not incentivize such efforts. Where decisions from controlling appellate courts favor disclosure, the People must strive to follow them. Thus, even if Jayson C.'s analysis that CPL § 245.20 (1) (k) (iv) "broadly requires disclosure of all impeachment evidence" were mere dicta — which this court does not agree is the case (see 200 AD3d at 449) — the People should take that dicta seriously. The People are well aware that many courts in this jurisdiction have rejected their narrow reading of Jayson C., their expansive readings of McCarty and Johnson, and their strained interpretation of CPL § 245.20 (1) (k) (iv) (see, e.g., People v Aron, 85 Misc 3d 1231(A) [Crim Ct, NY County 2025, Brown, J.]; People v Lithgow, 224 NYS3d 878 [Crim Ct, NY County 2024, Weiner, J.]; People v Robert K., 83 Misc 3d 1229(A) [Crim Ct, NY County 2024, Morales, J.]; People v Sanchez, 83 Misc 3d 671, 675 [Crim Ct, NY County 2024, McDonnell, J.]; People v Guzman, 77 Misc 3d 1223(A) [Crim Ct, NY County 2023, Maldonado-Cruz, J.]; People v Martinez, 75 Misc 3d 1212(A) [Crim Ct, NY County 2022, Rosenthal, J.]; People v Kelly, 71 Misc 3d 1202(A) [Crim Ct, NY County 2021, Gaffey, J.].)Continuing to ignore those rulings is not reasonable.
Here, knowing they were putting the prosecution of this case at risk, the People made no apparent effort to obtain the full records for their testifying officers' substantiated and unsubstantiated disciplinary matters. Their affirmation offers no information about when they contacted the NYPD, what they requested from the NYPD, what response they received, or whether they followed up about any outstanding materials.
Overall, the People have failed to establish that they "exercised due diligence and made reasonable efforts to identify mandatory discovery prior to filing [their] COC," and their COC is accordingly invalid (People v Bay, 41 NY3d 200, 204 [2023]). 
III. CPL § 30.30
In this case, in which the defendant is charged with an A misdemeanor and no felonies, the People must be ready for trial within ninety days of the commencement of the criminal action (CPL 30.30 [1] [b]). The parties agree that seventy-nine days are chargeable between the defendant's arraignment and the filing of the People's COC and COR. Because the People's COC was invalid, the People's contemporaneous declaration of trial readiness was illusory (CPL 30.30 [5]; Bay, 41 NY3d at 204). Thus, because the People had not validly stated ready for trial and no other CPL 30.30 exclusion applies, the time from the People's off-calendar filing to the next court date — an additional twenty-two days — is chargeable. 
The People did not validly answer ready for trial within at least one-hundred two days, and the defendant was therefore denied the right to a speedy trial (CPL 30.30 [1] [b]). The motion to dismiss is therefore granted (170.30 [1] [e]).
This constitutes the decision and order of this court.
Dated: June 3, 2025
New York, NY
Ilona B. Coleman, J.C.C.

Footnotes

Footnote 1:The implausibility of the People's interpretation of the statute is perhaps best illustrated by this category of discoverable material. A witness's contact information will rarely be relevant at trial, but it is clearly discoverable in every case. Similarly, the content of an expert witness's resume will never have any specific factual nexus with a defendant's charged conduct, but an expert's curriculum vitae is specifically listed as a discoverable item.

Footnote 2:The People's suggestion that the Second Department has already called Coley into question in People v Henderson (— AD3d &mdash, 2025 NY Slip Op 02084 [2025]) is incorrect. In Henderson, the issue was whether disciplinary records were discoverable for non-testifying officers (2025 NY Slip Op. 02084, *1). The court thus held based on the clear text that the records were not discoverable pursuant to CPL § 245.20 (1) (k) (iv) (id.). The court then explained that they were not discoverable under any other provision of paragraph (k) because the allegations did not "relate to the subject matter of the case" (id.). In other words, in addition to having no impeachment value, the non-testifying officers' disciplinary records also had no bearing on any possible suppression argument or trial defense (id.). Henderson does not address the scope or meaning of the phrase "relate to the subject matter of the case," and it certainly does not endorse the People's strained interpretation (see id.).

Footnote 3:Here, the People assert without citation or argument that "unsubstantiated" disciplinary allegations are not discoverable. "Unsubstantiated," however, simply means that an allegation "cannot be resolved because sufficient evidence is not available" (People v Barralaga, 73 Misc 3d 510 [Crim Ct, NY County 2021] [quoting People v Randolph, 69 Misc 3d 770 [Sup Ct, Suffolk County 2020]). In such cases, an allegation of misconduct has been made and subsequent investigation has not definitively established either that the officer's conduct was proper ("exonerated") or that the allegedly improper act did not occur ("unfounded"). (Id.) It is the allegation itself, which has not been disproven, which carries the tendency to impeach.

Footnote 4:Consider one of the IAB logs at issue in this case. The log states that the complainant called 911 to report that he had been robbed, that he had pointed out the person who robbed him, and that the responding officers, including the People's witness, took no action because they "knew the perpetrator." Yet in their motion, the People claimed that the log concerned only a "failure to follow up on a report that an individual had been sold fake crack cocaine." This questionable summary illustrates why discovery should not be filtered through prosecutors' adversarial assessment of evidentiary value.

Footnote 5:This is only a close question because the People's COC was filed before the Second Department decided Coley. In Coley, the Second Department implicitly but clearly overruled many of the cases on which the People rely, including People v Earl, 84 Misc 3d 44 (App Term, 2d Dept 2024), and People v Lewis, 78 Misc 3d 877 (Sup Ct, Kings County 2023). The Second Department's reasoning in Coley also clarifies the scope of Johnson, McCarty, and Macaluso: those cases held correctly that impeachment materials must "relate to the subject matter of the case," but they do not support the People's assumption that that language limits discoverability to misconduct allegations emerging from the defendant's investigation and arrest.