People v Rubio (2025 NY Slip Op 25206)

[*1]

People v Rubio

2025 NY Slip Op 25206

Decided on September 10, 2025

Criminal Court Of The City Of New York, Bronx County

Sorrentino, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on September 10, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Javier Rubio, Defendant.

Docket No. CR-004360-25BX

For the Defendant: Eli Salamon-Abrams, The Bronx Defenders
For the People: Darcel D. Clark, District Attorney, Bronx County (by: ADA Emma Cassidy)

Joseph M. Sorrentino, J.

The defendant Javier Rubio moves for dismissal of the accusatory instrument pursuant to Criminal Procedure Law ("CPL") §§ 30.30(1)(b) and 170.30(1)(e) based on the People's purported failure to file a valid Certificate of Compliance ("COC") and to timely discharge their discovery and speedy trial requirements pursuant to CPL §§ 245.20, 245.50(3), and 30.30(5). In the alternative, the defendant, inter alia, asks this Court to grant Refusal/VTL § 1194/Mapp/Ingle/Dunaway as well as Sandoval/Ventimiglia hearings.
Upon review and consideration of the submissions, court file, and relevant legal authority, the Court GRANTS that branch of the defendant's motion which is for dismissal. The remaining branches of the motion are denied as academic.
 RELEVANT PROCEDURAL BACKGROUND
On February 2, 2025, the defendant Javier Rubio was arrested and charged with violating VTL § 1192(2), an unclassified misdemeanor, and VTL § 1192(1) (driving while impaired), a violation. The arrest allegedly resulted from a hit and run incident after which the arresting officer, PO Rosa, stopped the defendant's vehicle believing the vehicle to have been involved in the hit and run incident. Later, it was shown that the defendant had not been involved in the hit and run incident and the defendant was not charged with any crime or violation in connection with that incident. However, the defendant was arrested and charged with violating the above-mentioned VTL provisions. The defendant was arraigned on February 3, 2025, and released on his own recognizance.
The People filed their Certificate of Compliance ("COC") and Statement of Readiness ("SOR") off-calendar on May 1, 2025. On June 18, 2025, the parties appeared before this Court for a discovery conference, however, the assigned Assistant District Attorney ("ADA") did not appear. As the issues at hand remained unresolved, a motion schedule was set.
The Defense filed this motion on July 9, 2025. The People filed their response on August 6, 2025, after requesting an extension from the Court. The Defense filed its reply on August 20, 2025.

DISCUSSION
[*2]I. Applicable Law
On August 7, 2025, amendments to the discovery law took effect, and as provided by the enacted bill, the Court must apply those amendments "to all criminal actions pending on such date and all actions commenced on or after such date."[FN1]

In accordance with the amendments and pursuant to CPL § 245.20, the People are required to disclose automatic discovery within specific timeframes. The statute details in a non-exhaustive list the types of "material and information in the possession, custody or control of the prosecution or persons under the prosecution's direction or control" that the "prosecution shall disclose to the defendant, and permit the defendant to discover, inspect, copy, photograph and test" (CPL § 245.20[1]). Further, "all items and information related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency shall be deemed to be in the possession of the prosecution" (CPL § 245.20[2]). The COC shall state that, "after exercising due diligence and making reasonable inquiries and efforts to ascertain the existence of, obtain, and disclose material and information subject to discovery, the prosecution has disclosed and made available all known material and information it has obtained subject to discovery The prosecution shall also identify the items that the prosecution is required to disclose and of which the prosecution is aware, but has been unable to obtain despite the exercise of due diligence as evaluated under this section" (CPL § 245.50[1]). If the People provide discovery after a COC is filed pursuant to their continuing duty to disclose, they must file a supplemental COC (CPL § 245.50[1]). CPL § 245.50(1) further directs that "[n]o adverse consequences to the prosecution or prosecutor shall result from the filing of a [COC] in good faith and reasonable under the circumstances." As such, the People must exercise due diligence to the degree that is reasonable under the circumstances and file their COC in good faith.
In People v Bay, the Court of Appeals found that, in evaluating prosecutorial due diligence, the "key question in determining if a proper certificate of compliance has been filed is whether the prosecution has exercised due diligence and made reasonable inquiries to determine the existence of material and information subject to discovery," a case-specific inquiry of the record at bar (see People v Bay, 41 NY3d 200, 211-213 [2023][emphasis added]; see also CPL §§ 245.20 [1], 245.50 [1]). The Bay Court makes clear that to oppose a motion to dismiss claiming that the prosecution's COC is illusory, the People "bear the burden of establishing that they did, in fact, exercise due diligence and made reasonable inquiries prior to filing the initial COC despite a belated or missing disclosure" (People v Bay, 41 NY3d at 213 [emphasis added]).
Following the August 7, 2025, amendments to the discovery law, the Court now must "look at the totality of the party's efforts" and consider all the following factors in analyzing due diligence, some of which were derived from the Bay Court: "the efforts made by the prosecutor to comply with the requirements of this article; the volume of discovery provided and the volume of discovery outstanding; the complexity of the case; whether the prosecutor knew that [*3]the belatedly disclosed or allegedly missing material existed; the explanation for any discovery lapse; the prosecutor's response when apprised of any allegedly missing discovery; whether the belated discovery was substantively duplicative, insignificant, or easily remedied; whether the omission was corrected; whether the prosecution self-reported the error and took prompt remedial action without court intervention; and whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial" (CPL § 245.50[5][a])). In considering these factors, "no one factor shall be determinative" and other considerations may be taken into account (CPL § 245.50[5][a]-[b]).
II. The Parties' Arguments
In their motion, the Defense argues that the People failed to act with due diligence in obtaining and disclosing numerous items of discovery, including: 1) rear camera footage from the arresting officer, PO Rosa's, police vehicle; 2) the Police Accident Report; 3) body-worn camera ("BWC") footage from officers who responded to the scene of the hit of run incident that led to the defendant's arrest; 3) names and work affiliations for all officers responding to the hit and run incident; 4) adequate witness contact information for witnesses on scene of the hit and run incident; 5) text messages and photos exchanged between PO Rosa and an unidentified police officer; and 6) complete Giglio material for testifying prosecution witnesses, PO Rosa and PO Espinoza. The Defense argues that despite reaching out three times to the People, the People failed to meaningfully confer with the Defense as they never responded substantively to the Defense's discovery inquiries. The Defense also asserts that the People failed to make any reasonable efforts to obtain the items in question before filing the COC.
In response, the People do not dispute that these items would be subject to automatic discovery, but instead maintain that they are unsure whether most of these items exist. The People argue that they have exercised due diligence by making general requests for materials on February 6, 2025, three days after the defendant's arraignment, and May 1, 2025, the date the People filed their COC and SOR. The People contend that they do not know whether the allegedly missing materials exist because after reaching out to PO Rosa on August 5, 2025, and August 6, 2025, PO Rosa did not respond nor come in to the District Attorney's Office for a scheduled meeting to answer questions about these materials. The People also argue that these discovery objections should be regarded as a suppression issue rather than a discovery issue. As for the names and work affiliations of all officers responding to the hit and run incident, the People contend that the Roll Call Log listing every officer on duty on the date of the incident should be sufficient. The People also contend that they have no knowledge of civilian witnesses, and that there is no certainty that the text messages by PO Rosa relate to the arrest. The People also contend that the Giglio files for the two testifying officers are complete.
In reply, the Defense argues that two requests before filing the COC, without any requests for the materials in question, cannot survive a due diligence analysis. The Defense also notes that any efforts to obtain the specific materials in question or ascertain their existence occurred only after the People's original due date to respond to the Defense's motion, and even the post-COC efforts were insufficient as the People only contacted one officer who failed to respond. The Defense also notes that the Roll Call Log cannot assist the Defense in determining which officers were actually present for the hit and run incident, as it is impossible from the face of the document to determine what officers were sent to what locations. As for the Giglio files, the Defense attaches to their reply an exhibit of one of the files demonstrating that a section is [*4]missing from the document, which the Defense asserts further illustrates a lack of due diligence in reviewing the discovery at issue.
III. The Court's Analysis
Pursuant to CPL § 245.50(5)(a), the Court must now consider certain factors in determining whether the People exercised due diligence, though "no one factor shall be determinative" (CPL § 245.50[5][a]-[b]).
First, the Court must consider the efforts made by the People to comply with CPL Article 245. Here, it is undisputed that the People only made two requests for discovery prior to the filing of the COC, which requests occurred on February 6, 2025, three days after the defendant's arraignment, and May 1, 2025, the date of the filing of the COC itself. The People attach to their response the emails documenting these correspondences, but each email contains the same list of routine items, neither including any of the materials at issue, thus falling short of due diligence (see People v Santos, 79 Misc 3d 1233[A] *4 [Bronx Crim. Ct. 2023]["according to the People, they first requested discovery in this case from the NYPD on February 8, 2023, and next followed up some 51 days later exceeding the 65 days the People would have had by law to fulfill their initial discovery obligations the People's efforts can hardly be described as 'diligent' and 'reasonable' when, outside of a single, generalized request, they made no additional efforts to get from the NYPD discoverable material within the time in which they were statutorily required to complete their initial discovery obligations"]). As noted, neither email to the NYPD included requests for the Police Accident Report, witness contact information, or names of police officers involved in the hit and run incident or their BWC footage in responding to that incident, which are routinely generated materials (see People v Vergara, 86 Misc 3d 1237[A] *5 [Bronx Crim. Ct. 2025] [finding that police accident reports, among other items, "are neither obscure nor difficult to obtain; rather, they are core items of discovery routinely produced in DWI cases in Bronx County"]).
The People also did not make any efforts to reach out to the arresting officer, PO Rosa, who is the subject of many of the Defense's objections, until May 1, 2025, as the February 6, 2025, email was addressed to another officer at the same precinct. The attempts that the People made to reach out to PO Rosa on August 5, 2025, and August 6, 2025, fall short of due diligence especially when the Defense made their initial requests for these materials on May 19, 2025, and the People did not make any attempt to contact PO Rosa until after their initial due date to respond to the motion at bar. Further, there is no showing that the People made any specific requests to PO Rosa about the items in question, even to determine their existence, at any point.
In considering the People's response when apprised of any alleged missing discovery, the Court finds that the People neglected to diligently confer with the Defense by not responding substantively to the Defense's objections until the filing of the People's response. The People also argue that the issues at hand should be saved for a potential suppression hearing; however, the Defense cannot effectively investigate the suppression issues without the subject discovery materials. The People's response as to the names and work affiliations for officers involved in the hit and run incident is also insufficient, as the People merely claim that the Roll Call Log, which was turned over, should be sufficient. However, as the Defense asserts, it is impossible to determine from the Roll Call Log alone which officers responded to the hit and run incident. The People also claim that their lack of knowledge of civilian witnesses means they do not have to ascertain the existence of witnesses not known to the police; however, based on the recitations of the facts in this case, a civilian witness would have been involved in the hit and run incident. [*5]Thus, this response is also unavailing, especially as the People have a duty to investigate the case (see People v Mesan-Mora, 2025 NY Slip Op. 25188 *7 [Bronx Crim. Ct. 2025] ["While the Court acknowledges that obtaining this contact information would require the People to make more specific or robust inquiries than if the witnesses' information was contained in the Defendant's arrest paperwork, these inquiries are part of the prosecution's obligations under Article 245 Because witness memory degrades over time, the failure to disclose this material may have prejudiced the defense; in any case, it has certainly impeded the defense's ability to investigate its case and prepare for trial"]).
Similarly, the People argue that there is no certainty that the text messages by PO Rosa relate to the defendant's arrest, however, the People do not make note of any attempts to determine the content of the text messages. Thus, this response is unavailing. As for the Giglio files, instead of conferring or clarifying with the Defense as to what sections may be missing, the People instead asserted that the files were complete. However, an exhibit provided to the Court by the Defense in their reply demonstrates that a section of the paperwork is missing. Although a minor issue, this is one that if the People appropriately responded, could have been rectified; instead, this section remains missing.
Neither party argues nor acknowledges whether the volume of discovery provided outweighs the volume of discovery outstanding; however, the items delineated by the Defense appear to be significant items of discovery relating to potential suppression issues in this case. Therefore, this factor weighs in favor of the Defense, especially as the People failed to request routine materials such as the Police Accident Report, a list of officers involved in the hit and run incident and their BWC footage, and witness contact information. However, the Court acknowledges that this case appears to be more complex than the average DUI case as it involves a hit and run incident prior to the defendant's actual arrest. Nonetheless, if the People had reviewed certain materials that were provided, they should have realized this fact and should have attempted to obtain discovery related to the hit and run incident. Thus, on balance, this factor weighs in favor of the Defense.
For most of the materials in question, the People assert that they do not know whether the materials exist, but this appears to be a result of failing to inquire with PO Rosa prior to the filing of the COC and failing to contact PO Rosa, in a timely fashion, following the Defense's request for additional discovery. Further, the lack of knowledge as to whether the items exist provides an indication that the People did not review their own discovery prior to turning it over to the Defense. Although the People were unaware prior to the filing of the COC whether these materials existed, they should have promptly worked to obtain an answer when the Defense inquired about these items. The explanations for why the People are unsure whether the items exist and for these discovery lapses are unavailing, especially where the Defense asserts that some of the items were mentioned by the arresting officer himself on his BWC footage, and where the Police Accident Report is routinely generated in any motor vehicle accident. Thus, these factors weigh in favor of the Defense.
With regard to the factors concerning "whether the belated discovery was substantively duplicative, insignificant, or easily remedied; whether the omission was corrected; whether the prosecution self-reported the error and took prompt remedial action without court intervention," the Court notes that none of the items at issue concern belated discovery and no supplemental COCs have been filed in this case, and the People did not self-report any errors (CPL § 245.50[5][a]).
Lastly, the Court must consider "whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial" (id.). Here, there are no delayed disclosures, as all materials at issue remain outstanding. Nonetheless, the Court observes that the People's failures in complying with their discovery obligations resulted in prejudice to the Defense. Both parties note that the arrest in this case occurred based on a hit and run incident where the arresting officer stopped the defendant's vehicle due to suspicion that the defendant had been involved, but the defendant was not actually involved in the hit and run incident. Most of the discovery requested by the Defense relates to the hit and run incident. Without these items of discovery, the Defense is inhibited from investigating the potential suppression issues in this case.
Viewing the totality of the People's efforts, the Court finds that the People failed to exercise due diligence in complying with their discovery obligations. Accordingly, the COC and SOR are deemed invalid.
IV. The CPL § 30.30 Calculation
A motion to dismiss must be granted where the People are not ready for trial within "ninety days of the commencement of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a misdemeanor punishable by a sentence of imprisonment of more than three months, and none of which is a felony" (CPL § 30.30[1][b]; 170.30[e]). The defendant has the initial burden to demonstrate that the prosecution failed to declare readiness for trial within the statutorily prescribed time (see People v Luperon, 85 NY2d 71, 77-78 [1995]). Computation for speedy trial purposes commences on the day following the filing of an accusatory instrument (People v Stiles, 70 NY2d 765 [1987]). The burden then shifts to the prosecution to identify excludable delays (see Luperon, 85NY2d at 78).
The following time periods are deemed chargeable against the People:
February 3, 2025 — March 20, 2025. During this time period, the accusatory instrument in this case was filed on February 3, 2024, and the defendant was arraigned on the same date. The case was adjourned to March 20, 2025, and no COC or SOR was filed during this period of time. This time period totals 45 days chargeable against the People.
March 20, 2025 — April 30, 2025. During this time period, the case was adjourned to April 30, 2025, for the filing of the COC and SOR as well as the submission of screening and assessment results. This time period totals 41 days chargeable against the People.
April 30, 2025 — May 20, 2025. During this time period, the case was adjourned to May 20, 2025, for the filing of the COC and SOR. The People filed their COC and SOR off-calendar on May 1, 2025. Given that the Court finds the COC and SOR invalid, this time period is includable. This time period totals 20 days chargeable against the People.
Thus, between the date of the filing of the accusatory instrument on February 3, 2025, and the adjournment date of May 20, 2025, a total of 106 includable days had elapsed, and a further analysis of chargeable periods is unnecessary.
Based on the foregoing, the Court finds that a total of 106 days, at a minimum, are chargeable against the People.
Because the People have exceeded their statutorily allotted time to bring this case to trial, that branch of the defendant's motion which is to dismiss the accusatory instrument is GRANTED.

 CONCLUSION
Based upon the foregoing, that branch of the defendant's motion which is to dismiss the [*6]accusatory instrument is GRANTED.
The remaining branches of the motion are denied as academic.
This constitutes the opinion, decision, and order of the Court.
Dated: September 10, 2025
Bronx, New York
Hon. Joseph M. Sorrentino, J.C.C.

Footnotes

Footnote 1: 2025 NY AB 3006 (NS), May 7, 2025, Section § 8. "This act shall take effect on the ninetieth day after it shall have become a law and shall apply to all criminal actions pending on such date and all actions commenced on or after such date. Any timeframes provided in this act regarding the time limitation to challenge a certificate of compliance shall run from the effective date of this act."