Matter of C.C. v D.C. (2025 NY Slip Op 05017)

Matter of C.C. v D.C.

2025 NY Slip Op 05017

Decided on September 18, 2025

Appellate Division, First Department

O'NEILL LEVY, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: September 18, 2025
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Peter H. Moulton
David Friedman Barbara R. Kapnick Martin Shulman Kelly O'Neill Levy

Index No. 8200/18|Appeal No. 4248|Case No. 2023-05842|

[*1]In the Matter of C.C., A Child Under Eighteen Years of Age, etc., Catholic Guardian Services, Petitioner-Respondent,
v
D.C., Respondent-Appellant, A.S., Respondent.

Respondent D.C. appeals from an order of disposition, Family Court, New York County (Clark V. Richardson, J.), entered on or about May 31, 202 to the extent of vacating the provisions of the order terminating his parental rights, and the matter remanded for further proceedings consistent with this decision.

Law Office of Bryan Greenberg, LLC, New York (Bryan Greenberg of counsel), for appellant.
Catholic Guardian Services, Bronx (Ana Torres of counsel), for respondent.
Dawne A. Mitchell, The Legal Aid Society, New York (Claire V. Merkine of counsel), attorney for the child.

O'NEILL LEVY, J. 

Respondent D.C. appeals Family Court's termination of his parental rights to the subject child based upon a finding that he is a notice-only father, and committing the custody and guardianship of the child to petitioner agency for purposes of adoption.
In June 2016, the New York City Administration for Children's Services brought Family Court Act article 10 neglect petitions against both parents of the child, and the child was placed in foster care. Respondent and the child's mother were never married; however respondent had previously filed an acknowledgement of paternity. Following a fact-finding hearing, neglect findings were entered against both parents, and after a dispositional hearing in April 2017, both parents were ordered to comply with drug treatment.
During this time the child remained in foster care and in April 2018, the agency filed a petition for the termination of parental rights against both parents. The fact-finding hearing concluded in July 2019, with Family Court finding that the mother permanently neglected the child. At the time of the hearing, Domestic Relations Law § 111(1)(d) provided that a father's consent to the adoption of a child would be required:
"only if such father shall have maintained substantial and continuous or repeated contact with the child as manifested by:
"(i) The payment by the father toward the support of the child of a fair and reasonable sum, according to the father's means, and either
"(ii) the father's visiting the child at least monthly when physically and financially able to do so . . . or . . .
"(iii) The father's regular communication with the child or with the person or agency having care or custody of the child . . ."
Respondent argued that he should be considered a parent whose consent was required for the child's adoption. Family Court noted that "the statute and the case law are unforgivingly severe" in that non-payment of support precluded respondent from being designated a consent father. The court indicated that as a notice father, respondent did not have a right to be heard at the fact-finding stage in his own right but that he would be permitted to give limited testimony as to the notice/consent issue only. Respondent testified that as of June 2016, when the child entered foster care, he had lived with the child for approximately a year and a half and during that time had provided "everything" to her. He further testified that after the child went into foster care, he visited regularly, both at the agency and at his mother's home upstate, and although he provided no financial support to the agency, the agency had never told him to do so. However, he stated, he helped his mother with food, clothes, and toy shopping for the child and gave the child numerous gifts. Following respondent's limited testimony, Family Court again concluded that he was a "notice-only father" pursuant to Domestic Relations Law § 111. No written fact-finding order is in the record.
A dispositional hearing on the termination of parental rights was held in November and December 2019. Respondent asked the court to dismiss the termination petition so that he and the child could continue to spend time together and to reunify in the future; respondent also argued that the child had relationships with other paternal relatives and that it was not in the child's best interests to be freed for adoption. Counsel for respondent, however acknowledged that at that time, respondent was not in a position to reunify with the child. On the record at the conclusion of the dispositional hearing, Family Court determined that it was in the child's best interest to be freed for adoption and committed her to the care and custody of the agency. No written order was issued at that time. In January 2020, the agency requested that the fact-finding hearing be reopened to present a termination of parental rights case as to the husband of the child's mother who was alleged to have abandoned the child. The agency served an amended petition which appears to have been granted on May 13, 2021.
In December 2020, respondent moved for leave to renew pursuant to CPLR 2221(e). He argued that he was a father whose consent was required for the child's adoption based on new case law — specifically, Matter of Amanda N. [Ping N.] (178 AD3d 565 [1st Dept 2019]) in which this Court concluded that Family Court improperly restricted consideration of the unwed father's support to the time when the child was in foster care, even though the child had lived with the father since birth and was financially supported by him prior to the foster care placement at age five (id. at 565-566). Thus, respondent argued that the fact-finding hearing should be reopened to allow him to introduce evidence of his relationship with and financial support of the child prior to her placement in foster care. Though the record is not clear, it appears that the court denied the motion to renew on or about March 3, 2021.
Subsequently, the child's maternal grandmother commenced a custody proceeding and the paternal grandmother filed a visitation petition. Family Court reopened the hearing for the purpose of determining the three petitions.
On May 31, 2023, Family Court issued its decision and order on disposition, concluding, among other things, that it was in the best interest of the child that custody and guardianship be committed to the agency for the purposes of adoption or any other long term permanency goal as appropriate, and denied the grandmothers' petitions. Family Court terminated parental rights, finding that the parents failed to address the issues that brought the child into foster care and provided no plan for the return of the child to their care and had absented themselves from the agency for many months. Domestic Relations Law § 111 was amended, effective December 30, 2022. Pursuant to section 111(1)(e)(iv), and subject to certain criteria, it now requires consent for adoption by any nonmarital parent who has executed an unrevoked acknowledgement of parentage or filed an unrevoked notice of intent to claim parentage of a child. The amendment did away with the necessity for some parents with children in foster care to establish that in addition to having visited or regularly communicated with the child that they made payments to the foster care agency caring for the child. The legislature acknowledged that this requirement resulted in noncompliant or unknowing parents permanently losing their parental rights by being relegated to receiving only notice of the termination proceedings (see Senate Mem in Support, Bill Jacket, L 2022, ch 828 at 6-7). This amendment went into effect three years after Family Court's July 2019 determination that respondent father was solely entitled to notice that the agency was seeking to terminate parental rights to free the child for adoption but before the May 2023 dispositional order was issued.
Respondent argues that Family Court erred in not applying the amended version of Domestic Relations Law § 111 while the fact-finding and disposition were still being litigated. He contends that the amendment was remedial and thus should have been given retroactive effect to effectuate its beneficial purpose.
Generally, a statute "will not be given retroactive construction unless an intention to make it so can be deduced from its wording" (Aguaiza v Vantage Props., LLC, 69 AD3d 422, 423 [1st Dept 2010]). A legislative directive that a law shall "take effect immediately," coupled with the remedial nature of the amendment, indicates a "'sense of urgency'" that should be effectuated through retroactive application (Matter of Gleason [Michael Vee, Ltd.], 96 NY2d 117, 122 [2001]). The purpose of remedial statutes is to correct imperfections in prior law by giving relief to an aggrieved party (see Matter of Mia S. [Michelle C.], 212 AD3d 17, 22 [2d Dept 2022], lv dismissed 39 NY3d 1118 [2023]; see also Matter of Asman v Ambach, 64 NY2d 989, 991 [1985]), to the extent that they do not impair vested rights or bestow additional rights (see Matter of Marino S., 100 NY2d 361, 371 [2003]). As the express purpose of the amendment at issue was to correct how the law applied to nonmarital parents and was "effective immediately," we find that it should be given retroactive effect. Accordingly, we do not consider respondent's failure to provide financial support after the child entered foster care as grounds for finding that he is a notice-only father precluded from being heard on the permanent neglect petition as it pertains to him (see Matter of Mia S., 212 AD3d at 24-25).
Because Family Court had determined that the respondent was a "notice-only" father, it did not make a determination at the conclusion of the fact-finding hearing as to whether respondent had permanently neglected the child, which must be supported by clear and convincing evidence. As no full fact-finding hearing occurred as to respondent, the provisions of the order terminating his parental rights should be vacated and this matter remanded to Family Court for further proceedings consistent with this decision.
We have considered respondent's remaining contentions and find them unavailing.
Order of disposition, Family Court, New York County (Clark V. Richardson, J.), entered on or about May 31, 2023, modified, on the law, without costs, to the extent of vacating the provisions of the order terminating respondent D.C.'s parental rights, and the matter remanded for further proceedings consistent with this decision.
Opinion by O'Neill Levy, J. All concur.
Moulton, J.P., Friedman, Kapnick, Shulman, O'Neill Levy, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: September 18, 2025