People v Grant (2025 NY Slip Op 25217)

[*1]

People v Grant

2025 NY Slip Op 25217

Decided on September 22, 2025

Criminal Court Of The City Of New York, Bronx County

Goodwin, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on September 22, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Tommy Grant, Defendant.

Docket No. CR-031405-24BX

For the Defendant: 
Giovanni L. Escobedo
For the People: 
Bronx ADA Sabrina Fincher

David L. Goodwin, J.

Defendant Tommy Grant contends that the People did not comply with their discovery obligations, and thus violated his speedy trial rights, because they failed to disclose (1) a clear version of a surveillance video, which was instead turned over only in the form of a poor-quality, off-line copy recorded by police officers; and (2) certain complete and unreacted impeachment materials for the two testifying officers. As an alternative to dismissal, Grant seeks hearings and other omnibus relief.
As explained below, dismissal on speedy trial grounds is not warranted because the People demonstrated due diligence and good faith overall in connection with their discovery obligations. A Wade/Dunaway hearing is ordered. All other requests for relief are referred to the trial court or denied. The People are directed to extend the order of protection through the current adjourn date of October 2, 2025, upon issuance of this decision.
I. Background
Case Initiation to the Filing of the COC
Via a December 14, 2024 accusatory instrument, Grant was charged with petit larceny (P.L. § 155.25) and fifth-degree criminal possession of stolen property (P.L. § 265.01(2)), both class A misdemeanors, based on allegations that he stole two boxes of diapers from a Dollar General store.[FN1]
According to an identification notice, see C.P.L. § 710.30(1)(b), Grant was [*2]identified by a complaining witness after a show-up procedure.
The People filed their discovery compliance materials 75 days after arraignment, on February 27, 2025. According to their certificate of compliance ("COC"), the People had disclosed approximately 36 different categories of material, including an item denominated as the "[v]ideo of incident," body cameras, activity logs, and Giglio materials for Officers Urman and Sanchez, both of whom were designated as witness for the People at the eventual trial. People's Resp., Ex. A at 2—3. The People certified more broadly that they had "disclosed and made available to the defendant all known material and information that is subject to [automatic] discovery" after "exercising due diligence and making reasonable inquiries" to learn of the existence of discoverable material. Id. at 1.
The court action sheet for the first post-COC appearance reflects that the People maintained their readiness. Defense counsel objected to that declaration of readiness and to the People's COC. See Action Sheet for 3/19/2025. The case was then adjourned for a May 7 discovery conference. However, the action sheet does not reflect either the substance of the defense's objections or whether the parties were ordered to confer on outstanding discovery issues.
Defense Discovery Objections
Through counsel, Grant emailed objections to the People the morning of the scheduled May 7 discovery conference. Grant identified two alleged deficiencies. First, he cited the People's failure to obtain and disclose the original copy of the location's surveillance footage. Instead, they had disclosed a "poor and blurry" recording "of a screen playing the video." People's Resp., Ex. E at 2 (pdf pag.). Second, he objected to the scope and thoroughness of the People's Giglio impeachment disclosures:
- GIGLIO: the prosecution failed to provide all Giglio material deemed to be within its possession
• 
ALL GIGLIO Including: IAB log; Internal Case Management System Worksheet/ Internal Affairs Log; IA Reports; Internal Case Management and Tracking Worksheet/ Allegation Finding (ICMT); documents from the NYPD Legal Bureau; CCRB Allegation History; CCRB CTS; and CPI (disciplinary file including incidents investigated and where no action taken)
• The Prosecution provided improperly redacted Giglio material
• 
UNDERLYING GIGLIO MATERIAL: all PDF attachments, photographs, media files and other attachments
Id. at 1 (pdf pag.) (footnote call omitted, formatting as in original).
The People did not have time to review counsel's objection before the court appearance later in the day, at which this motion schedule was set. Grant filed his motion in early July 2025. Briefing was complete by mid-September.

II. The Defense Motion
 Grant's Arguments
In his counseled motion, Grant contends that the People violated his statutory and constitutional speedy trial rights. See Defense's Mot. at 1; see also Defense's Aff. ¶¶ 15—50, 55.
As a threshold issue, Grant argues that he was not required to promptly inform the People of the defects in their COC because "[i]t is not the Defense's job to point out the prosecutor's [*3]omissions, lack of due diligence or missing material." Defense's Aff. ¶ 31. A requirement to the contrary, Grant asserts, would conscript defense counsel into the prosecution of his client. Id.
On substance, Grant contends that the People's COC was defective at the time it was filed. The People were required to obtain and produce all media associated with the case, but did not even try to obtain a clear copy of the original surveillance video shown to law enforcement on the arrest date. See id. ¶¶ 51—54 (citing, among others, C.P.L. § 245.20(1)(j)). The People also were obligated to disclose the relevant Giglio material for Officers Urman and Sanchez, such as IA reports, internal case management worksheets, Central Personnel Indices, and underlying media referenced with the Giglio material. See id. ¶¶ 39—50.
Because the People were aware of these Giglio defects—the Giglio redactions, Grant avers, were made under "the prosecution's policy"—the broader COC certification of full and complete disclosure was false, evincing the People's lack of good faith. Id. ¶¶ 34—35. And since the People's COC was invalid, more than 90 days of charged time has elapsed, requiring dismissal in a misdemeanor case like this one. See id. ¶¶ 55—60.
Although Grant invokes both the statutory speedy trial time limit of C.P.L. § 30.30 and "the Sixth and Fourteenth Amendments to the United States Constitution," id. ¶ 60, he does not raise any arguments in connection with any alleged constitutional speedy trial violation. He also does not request an order requiring disclosure of any of the Giglio material that (he alleges) has not yet been disclosed in complete form. Grant otherwise seeks Wade/Dunaway hearings connected to the show-up identification—to which the People consent, see People's Resp. at 18—along with (among other things) Sandoval/Ventimiglia/Molineux hearings and leave to file additional motions if warranted. See id. ¶¶ 61—74.
The People's Response
The People respond by raising a procedural objection to Grant's motion, citing recent statutory amendments to the discovery law that require a defendant to confer in good faith with the People before moving to dismiss. See C.P.L. § 245.50(4)(c). According to the People, emailing objections 69 days after the filing of a COC falls short of "timely efforts to resolve the discovery dispute in good faith" under the new law. People's Resp. at 14—16. However, the People do not address what (if any) objections were made during the March 2025 appearance, or suggest that the court itself required the parties to diligently confer on that day.
On substance, the People respond that they exercised due diligence and good faith throughout the discovery process, detailing extensive outreach in December 2024, along with two final requests for outstanding material in February 2025. See People's Aff. ¶¶ 6(2)—14; see also People's Resp., Ex. D (reflecting email requests and NYPD responses). Because the original surveillance video was never in their possession, either directly or constructively through the NYPD, the People disclosed the only copy of the video they actually had, in satisfaction of their statutory obligation. See People's Resp. at 8—9. The People provided all Giglio material that related to the subject matter of the case; any redactions related to civilian information or other nondiscoverable material, and the People were not responsible for redactions made by the CCRB. See id. at 9—14. In any event, once the People reviewed the defense objections, they obtained in August and disclosed in September less-redacted versions of the IAB logs. See id. ¶ 16.
As to the omnibus relief, the People consent to Wade/Dunaway hearings but generally oppose Grant's other requests. 
Grant's Reply
In his short reply, Grant does not dispute that his first outreach to the People was 69 days after the People certified their discovery compliance—that is, he also does not address what transpired during the March 2025 court date—and instead argues that the relevant revisions to the discovery law do not apply here, either with regard to this issue of good-faith negotiations or more generally. Defense's Reply Aff. ¶¶ 26—37. Regarding the surveillance video, Grant relies for the first time on People v. Guzman, 75 Misc 3d 132(A), 2022 NY Slip Op. 50445(U) (App. Term, 9th & 10th Jud. Dists. 2022), for the proposition that the People were required to attempt to obtain the original copy of the surveillance video from the scene. Defense's Reply Aff. ¶ 6. Grant otherwise reiterates his arguments.

 III. Legal Standard
When the highest count charged is a class A misdemeanor, the People are required to be ready for trial within 90 days of commencement. See C.P.L. § 30.30(1)(b). The People must comply with their discovery obligations before declaring readiness for trial. See id. § 30.30(5). If the People certify that they have complied with their discovery obligations, yet that certification is later deemed invalid, any declaration of readiness is deemed illusory and the speedy trial clock continues to run, requiring dismissal if over 90 days have elapsed. See People v. Bay, 41 NY3d 200, 213 (2023)
Under both the current and pre-August-2025 revisions to New York's discovery laws, the validity of the People's COC rises and falls on whether the People can demonstrate good faith and due diligence in discharging their discovery obligations. See Bay, 41 NY3d at 211—12; C.P.L. § 30.30(5)(b) (Aug. 2005); § 245.50(5) (Aug. 2005). Factors relevant to diligence are fact- and case-specific, and include the People's efforts to comply with their obligations, the volume of discovery provided, the complexity of the case, and the People's response to objections from the defense (or, if applicable, whether the People fixed any omissions on their own initiative). See Bay, 41 NY3d at 212; C.P.L. § 30.30(5)(b); C.P.L. § 245.50(5)(a).[FN2]

The People bear the burden of demonstrating that they exercised due diligence. However, there is no "strict liability" rule for dismissal; the discovery statute does not require perfect compliance. Bay, 41 NY3d at 212—13.

IV. Discussion
a. The new defense obligations to diligently confer and to affirm that timely, good-faith efforts were made to resolve any discovery disputes cannot be used to procedurally bar motions filed before the August 2025 effective date of the revised Article 245.
The People invoke Grant's delay in objecting to their COC, and in filing the motion now under consideration, solely by way of reference to the recent amendments to Article 245. Specifically, the People assert that Grant did not "make timely efforts to resolve the discovery dispute in good faith" before sending objections and filing his motion; and, while not explicitly stated, the People presumably intend to suggest that Grant's motion is procedurally defective. See People's Resp. at 15—16.
On these facts, however, this new procedural obligation cannot be retroactively applied to bar Grant's motion, which was filed before the August 2025 effective date of the statute, by [*4]rendering it procedurally defective so as to prevent consideration on the merits. Treating the new obligation as a procedural bar in this context would extinguish a substantive right previous possessed—and there is no indication that the Legislature intended such an outcome. Accordingly, the presumption against statutory retroactivity prevents the urged retroactive application the new rule.
While courts should generally apply the law in effect at the time a decision is rendered, the usual rule is that a statute should not be given truly retroactive effect if doing so would impair the substantive rights of a party, increase liability for past conduct, or impose new duties for already completed transactions—at least, absent legislative directive to the contrary. See Regina Metro. Co., LLC v. NY Div. of Hous. & Cmty. Renewal, 35 NY3d 332, 365 (2020); Landgraf v. USI Film Prods., 511 U.S. 244, 270, 273, 280 (1994) (discussing retroactive application when a new law attaches "new legal consequences to events completed before [the statute's] enactment"). A clear legislative intent can be evinced from, for instance, a directive that a remedial statute take effect immediately. Matter of C.C. v. D.C., — AD3d —, 2025 NY Slip Op 05017, at *1 (1st Dept. 2025).
However, true retroactive effect is different from simply applying a new law in a case "arising from conduct antedating the statute's enactment" or upsetting "expectations based in prior law," neither of which is subject to the presumption against retroactivity. Landgraf, 511 U.S. at 269.
Before the new version of Article 245 went into effect in early August 2025, C.P.L. § 245.50(4)(b) and (c) required COC objections and motions to be lodged "as soon as practicable," but contained no explicit requirement that the parties confer and resolve issues prior to the defense moving to dismiss. Instead, courts were empowered by C.P.L. § 245.35(1) to streamline discovery litigation by issuing discretionary orders for parties to confer about discovery issues before seeking a court ruling. See, e.g., People v. Morales, 86 Misc 3d 523, 525 (N.Y.C. Crim. Ct., Kings Co. 2025) (Fong-Frederick, J.) (referencing a court directive to diligently confer under § 245.35(1)).
The revised § 245.50(4)(c), by contrast, imposes (by implication) affirmative conferral and affirmation requirements. The new version of the statute requires that "any challenges" to a COC be accompanied by an affirmation that the moving party timely conferred (or tried to do so) before filing a challenge. C.P.L. § 245.50(4)(c). The statutory change in question—part of a broader overhaul of Article 245—was enacted in May 2025, but did not take effect until 90 days later on August 7. See People v. Rubio, — Misc 3d —, 2025 NY Slip Op 25206, at *2 & n.1 (N.Y.C. Crim. Ct., Bronx Co. 2025) (Sorrentino, J.). The Legislature directed that the revised Article 245 "shall apply to all criminal actions pending on such date and all actions commenced on or after such date." 2025 Sess. Law News of NY Ch. 56 (S. 3006-C), Part LL § 8. But the Legislature also specified that all new "time limitation[s] to challenge a certificate of compliance" would instead run from the effective date of the new revisions. Id.
Because the People wish to use Grant's failure to confer and to certify as a procedural bar—that is, to block consideration of the merits of his motion—the question is whether the new conferral and certification requirements apply retroactively to COC-challenge motions filed before the effective date of the amendments to render those motion procedurally defective. The answer to that question, as explained below, is "no."
Applying the conferral and affirmation requirements retroactively here would have the effect of rendering defective all motions filed and pending on August 7 where the defense did [*5]not confer, even though there was no statutory obligation to do so at the time (and so long as no court directed otherwise).[FN3]
Cast in the requested light, the statutory change is not merely procedural—regulating "secondary rather than primary conduct," Landgraf, 511 U.S. at [*6]275—but substantive, imposing a previously nonexistent new conferral and certification requirement and (arguably) diminishing substantive rights if that requirement were not followed. See Regina Metro, 35 NY3d at 366. In other words, the requested application is a true retroactive application that would extinguish or impair preexisting rights.
And while the Legislature directed that the revised Article 245 apply to all cases pending at the time of its effective date, the Legislature did not evince an intent, either explicit or implicit, to implement its new procedural requirements in a way that would undermine motions pending as of early August. In fact, to the contrary, the Legislature both (1) deferred the effective date of the entire law and (2) specifically directed that the new timeframes would apply only going forward. The Legislature's attention to the new timeframes, in particular, suggests that there was no desire for any of the new statutory revisions to procedurally bar any already filed motions.
Thus, the conferral requirement should affect only "steps taken after [the statute's] enactment" rather than imposing a new obligation that did not exist before. MTGLQ Invs., L.P. v. Gross, 79 Misc 3d 353, 359 (Sup. Ct., Westchester Co. 2023) (Greenwald, J.); cf. People v. King, 42 NY3d 424, 428 (2024) (concluding that applying the COC requirement to invalidate readiness statements made prior to the enactment of Article 245 amounted to a "plainly retroactive" effect). The conferral and certification requirements cannot be fairly applied to Grant's motion.
To be clear, the above should not be taken to imply that other parts of the revised statute, or even these specific conferral and certification requirements, cannot be applied to preexisting motions or cases in a way that would not create an impermissible retroactive effect. None of that is at issue here, and any such retroactivity concerns can be addressed by a future case. The discussion above relates only to the use of these new mechanisms as a procedural bar in cases where no conferral was previously ordered.
Moreover, even the old version of § 245.50(4) required discovery challenges to be made as soon as practicable. The People might have had a colorable argument that the objections here were not filed as soon as practicable. See People v. Seymour, 84 Misc 3d 23, 25 (App. Term, 9th & 10th Jud. Dists. 2024) (concluding that objections filed 72 days post-COC were not lodged as soon as practicable). But the People have not made that argument. Accordingly, the People forfeited any argument that Grant's motion was not filed as soon as practicable. 
In sum, because the conferral requirement does not apply here, Grant's motion is not defective. The Court will reach the merits.
b. The People met their burden of showing good faith and due diligence, because the alleged defects in their COC are far outweighed by the material disclosed in this otherwise straightforward case.
Evaluated on its merits, however, the branch of the motion seeking dismissal is nevertheless denied. The People's COC passes muster and withstands Grant's motion to dismiss.
As an initial matter, Grant's challenge to the People's good faith is unpersuasive. He highlights that the COC purported to reflect disclosure of "all known material and information" despite the People's allegedly erroneous redaction of Giglio material and incomplete disclosure of same. Escobedo Aff. ¶ 34. But the certification in question pertains to the disclosure of all discoverable material; and, as the People make clear, it is their position that the redacted Giglio material was either provided in that form (meaning the People never possessed the unredacted versions) or is not actually discoverable. This is not enough to show a lack of good faith on the [*7]particular record presented here.
As to due diligence, that record reflects both frequent outreach from the People to their discovery liaison and that extensive discovery was ultimately provided in what appears to be a relatively straightforward retail theft case. See Bay, 41 NY at 212. Weighed against the People's proffer, the two deficiencies that Grant identifies do not persuasively call into question the People's diligent execution of their discovery obligations.
Regarding the surveillance video, Grant objects to the low-quality and off-line version apparently provided by the People, as opposed to the better-quality source maintained by the store.[FN4]
As neither party has attached the video, its quality cannot be directly evaluated. But there also appears to be no question that neither the People nor the NYPD possessed the source video, which was instead held by the retail establishment and could have been obtained by defense counsel. See People v. Polanco, 83 Misc 3d 1287(A), 2024 NY Slip Op. 51235(U), at *5 (N.Y.C. Crim. Ct., Bronx Co. 2024) (González-Taylor, J.) ("[T]he People have no duty to disclose evidence which does not exist, and which would not have been within their control . . . ."). And while it certainly would have been better for the People to try to obtain the original video if the copy is indeed of low quality, other trial courts have generally declined to invalidate COCs on similar facts. See, e.g., People v. Perkins, 83 Misc 3d 1221(A), 2024 NY Slip Op. 50770(U), at *5 (Sup. Ct., Queens Co. 2024) (Yavinsky, J.) ("Compared to the voluminous discovery provided, the Court declines to find that the sole item missing — surveillance video which was never in the People's possession — would constitute a lack of due diligence."); cf. People v. McClain, 53 AD3d 556, 556—57 (2d Dept. 2008) (concluding there was no Brady violation when the People did not obtain surveillance video). And while Grant relies to the contrary on the Appellate Term's decision in People v. Guzman, the missing video in that case appears to have been from a police dash cam—an item in the possession of the NYPD and, by extension, the People, unlike the video at issue here. See Guzman, 2022 NY Slip Op. 50445(U), at *1—2, 4—5.
The Giglio material is more difficult to evaluate. While Grant challenges improper redactions and alleged incomplete disclosures, the record does not quite clarify what was provided, or whether the material that Grant seeks is even still outstanding after the People's supplemental September 2025 Giglio disclosure.[FN5]
Taking the screenshots provided in Defense [*8]Exhibit B at face value, the People appear to have decided against disclosing attachments to several IAB logs for both Officer Urman and Officer Sanchez. While very little context is provided for any of the attachments—at least one of the IABs is identified as substantiated, and another says "Failure to review surveillance video," Defense's Mot., Ex. B at 4 (pdf pag.)—nothing about them suggests shortcomings that would invalidate the COCs. And the People otherwise represent that they disclosed materials associated with all substantiated, unsubstantiated, and pending allegations for each officer, as well as lawsuit information. People's Resp. at 10. Those efforts appear to have met the statutory requirements in the context of this case.
Finally, while Grant invokes constitutional speedy trial guarantees and cites C.P.L. § 30.20, he confines his actual arguments to § 30.30, not the constitutional test of People v. Taranovich, 37 NY2d 442, 445 (1975) (establishing five-factor test), and Barker v. Wingo, 407 U.S. 514, 530 (1972) (establishing the equivalent four-factor federal test). Regardless, the relevant constitutional factors do not favor him. In particular, he has not shown that any delay has been extensive or egregious, or that he has been prejudiced by any of the delay in the case, to the extent that delay could even be attributable to the People. See Taranovich, 37 NY3d at 442.
Accordingly, the motion to dismiss is DENIED. While Grant does not specifically request disclosure of the various IAB attachments, the People are nevertheless ORDERED to disclose them to the defense, and may apply to the court for a protective order if there are any concerns about their contents. See C.P.L. §§ 245.30(3), 245.35(4).

* * *
For the reasons set forth above, the motion to dismiss is DENIED. The People are ORDERED to disclose the various IAB attachments sought by Grant. Wade/Dunaway hearings are ORDERED. All Sandoval/Molineux/Ventimiglia issues are referred to the trial court. Grant's request to file additional motions is DENIED, except that he may make a more-specific application for disclosure of additional Giglio materials that he believes should be disclosed.
All other requests for relief are denied. Because the order of protection has not yet been extended, the People are directed to extend the order of protection through the current adjourn date of October 2, 2025, when this decision is issued.
Dated: September 22, 2025
Bronx, NY
David L. Goodwin
Judge of the Criminal Court

Footnotes

Footnote 1:An additional weapons charge was dismissed on the People's motion in December 2024.

Footnote 2:While the revised statute allows consideration of the prejudice caused by discovery defects or delays, see C.P.L. § 245.50(5)(a), this decision focuses on factors applicable under both the old and new tests, under which Grant's challenge fares the same.

Footnote 3:While it is possible that the court did direct the parties to confer back in March, the People have not suggested as much or provided the minutes of that appearance, so this discussion assumes that the parties were not directed to confer.

Relatedly, Grant's argument about the ethical problems presented by a conferral requirement is well-taken, at least to a point. New York's revised discovery regime was "part of a broader criminal justice reform package aimed at creating a more transparent and equitable criminal justice system by restructuring disclosure obligations and compliance mechanisms in criminal cases," intended to "create transparency" by "affording those charged with the ability to make informed decisions and create a greater opportunity for accurate justice and an even playing field." People v. Coley, — AD3d —, 2025 NY Slip Op 01945, at *5 (2d Dept. 2025). But because discovery reform was tethered to statutory speedy trial obligations and § 30.30's penalty of mandatory dismissal for noncompliance, see People v. Labate, 42 NY3d 184, 190 (2024), the Legislature created a system with incentives very much unlike those in civil litigation, where dismissal is far from the first remedy for discovery issues. See, e.g., Arbor Realty Funding, LLC v. Herrick, Feinstein LLP, 145 AD3d 624, 625 (1st Dept. 2016) (imposing a lesser sanction than dismissal given partial discovery compliance and "the strong public policy in favor of disposing of cases on the merits"); Guggenheim Cap., LLC v. Birnbaum, 722 F.3d 444, 450—51 (2d Cir. 2013) (describing dismissal and like remedies as "severe sanctions" for discovery noncompliance in federal cases that may be appropriate in "extreme situations"); see also Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976) (per curiam) (describing dismissal as "the most severe" civil discovery sanction).

For a criminal defendant, obtaining all the discovery needed to make informed decisions and achieve equal justice is the second-best outcome. The best outcome, and one that is far from a sanction of last resort, is total dismissal of the case. And because defense counsel is ethically charged with "the single-minded, zealous representation of the client," People v. Hawkins, 11 NY3d 484, 492 (2008), amicable resolution of discovery issues is in arguable tension with ensuring "that the client receives the most favorable outcome possible" in the form of a total dismissal, William J. Genego, The Future of Effective Assistance of Counsel: Performance Standards and Competent Representation, 22 Am. Crim. L. Rev. 181, 200 (1984).

In some ways, the new conferral requirement may reduce this tension. Because remaining silent can no longer lead to dismissal under § 30.30, that pathway is now closed. But the new conferral requirement also now asks counsel to navigate the lower boundary of good-faith conferral, always with the goal of dismissal in mind. It remains to be seen how the law will treat conferrals that are alleged to fall short of good faith.

Footnote 4:Grant argues in his reply that the off-line video was also incomplete, as surveillance showing the register area "was not provided" even though it was "available." Escobedo Reply Aff. ¶ 39. He does not appear to have raised this issue either in his objections to the People or in his initial motion, and arguments raised for the first time in a reply need not be considered. See People v. Ford, 69 NY2d 775, 777 (1987) ("This contention was improperly raised for the first time in appellant's reply brief to this court . . . ."); People v. Walls, — Misc 3d —, 2025 NY Slip Op 25125, at *2 (App. Term, 2d, 11th & 13th Jud. Dists. 2025) ("[A]ny issue raised for the first time in reply papers was not properly before the motion court . . . .").

Footnote 5:Although one of the factors relevant to diligence is the People's response when apprised of missing or incomplete discovery, see Bay, 41 NY3d at 212, Grant does not address the otherwise-unexplained gap between May 2025 and September 2025, or argue that it diminished the People's diligence. Even if he had, though, the People's diligence was not fatally undermined by this delay, although a swifter response would have been better.